Frederick E. OTT, Jr., Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 18772-3.

United States District Court,
W. D. Missouri, W. D.

Nov. 10, 1970.

Frederick E. Ott, Jr., pro se.

No response by respondent.

ORDER GRANTING PETITIONER LEAVE TO PROCEED IN FORMA PAUPERIS AND DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Petitioner, a federal convict confined in the United States Medical Center for

Federal Prisoners, has petitioned for a writ of habeas corpus to compel the respondent to release him as having been paroled by the United States Board of Parole. Petitioner has also requested leave to proceed in forma pauperis. Leave to proceed in forma pauperis will be granted.

Petitioner gives little or no information in respect to his conviction, sentence and resultant confinement in the Medical Center. He admits that he is serving a federal sentence of imprisonment for a term of five years which was imposed by the United States District Court for the District of Wyoming. He does not challenge the legality or constitutionality of that sentence. Petitioner contends, rather, that he should be released on parole by respondent because he was denied federal rights during his recent hearing by the United States Board of Parole. Specifically, petitioner states that Section 4202 of Title 18, U. S.C., dictates his mandatory release after service of one-third of his sentence (to which he contends that he is entitled, having served 25 months of his sentence); that during the recent hearing conducted by the Board of Parole, he was denied the assistance of counsel; that the Board of Parole acted contrary to the weight of the evidence inasmuch as petitioner had a good record and the only evidence to the contrary would have had to be "prejudiced reports" (which he in fact doubts were used against him); and that because of absence of services of counsel, such evidence would have had to be "uncontested and uncross examined." Petitioner gives the following description of the proceedings held to determine his eligibility for parole:

"Plaintiff was asked various questions of his past and what he felt he had accomplished while at LaTuna, serving the federal sentence of Five (5) years, also what were his parole plans if granted a parole. Plaintiff stated fully and truthfully what he had accomplished and what were his plans when released on parole. After a short pe-

riod of time Mr. Walter Dunbar, the Parole Hearing Member, said that he was satisfied with what he had been told by plaintiff's Caseworker at La-Tuna, also that he was very impressed with the excellent work reports that Plaintiff had recived (sic) prior to his parole hearing and also the fact that Plaintiff had a clear conduct record throughout his entire sentence thus far. I was asked to step out into the Hallway while The Parole Judge and my Caseworker conferred on some points. Later I was informed that Mr. Dunbar, the Parole Board Hearing Member recommended that I receive a Parole Grant for June 10th, 1970, and also requesting that the Warden of the Federal Correctional Institution of LaTuna place me on the Work Release Program into the El Paso, Texas community for transition to release work and community adjustment. I was put on the Work Release Program at LaTuna immediately and was working in the El Paso, Texas community with a very reputable corporation, namely, Kessler Industries, Inc., 8600 Gateway East, El Paso, Texas, as Assistant Purchasing Agent for this vast organization. Mr. Calvin K. Kessler, President of this firm made note that he was very satisfied with my adjustment and gave me his guarantee of permanent employment with his company upon being released on Parole, which was slated for June 10th, 1970, per Mr. Walter Dunbar's written recommendation on the Parole Summary of the Hearing at LaTuna, Texas in February of 1970. I remained in the El Paso community for a period of time and then on Friday, March 20, 1970 the U.S. Board of Parole (other members) reversed Mr. Walter Dunbar's decision of Parole grant and so ordered that I be 'continued to expiration of my sentence,' which is a period of now 17 months away, then it was a period of 20 months hence. This in itself was illegal as the U.S. Board of

Parole policies provide that every case, once heard, will be reheard every year, for review and possible awarding of Parole. Subsequently, after receiving the reversial (sic) by the other members of the U.S. Board of Parole, I was taken off the Work Release Program and returned inside of the institution. My Work Report while on the Work Release Program was excellent and my behavior was above reproach."

▪ The petition herein, however, should be denied. Petitioner does not state the denial of any federal right. Petitioner's contention that the provision of Section 4202, Title 18, U.S.C., that a prisoner "may be released on parole after serving one-third of such term or terms" makes his release mandatory is without merit. "[P]arole is a privilege, the lawful deprivation of which does not impinge upon any constitutional right." Carson v. Executive Director, Department of Parole (C.A.10) 292 F.2d 468, 469, and cases therein cited. The obvious intent of the use of the word "may" in the statute is to give the Board of Parole the power to determine eligibility for parole. "Under the law 18 U.S.C. § 4203, the Board possesses independent status and the discretionary power to authorize the release of a federal prisoner on parole." United States v. Frederick (C.A.3) 405 F.2d 129, 133. The determination of eligibility for parole is within the sole discretion of the Board of Parole and, absent exceptional circumstances or the denial of a constitutional right, the exercise of that discretion is not reviewable by the courts. Section 4203, Title 18, U.S.C.; Shelton v. United States Board of Parole, 128

U.S.App.D.C. 311, 388 F.2d 567; Brest v. Ciccone (C.A.8) 371 F.2d 981; French v. Ciccone (W.D.Mo.) 308 F. Supp. 256; Langston v. Ciccone (W.D. Mo.) 313 F.Supp. 56. The hearing conducted by the Parole Board to determine eligibility for parole is not an adversary proceeding and no special standards govern its conduct nor are the procedural rights or privileges to be granted therein comparable to those accorded even in other types of hearings (e. g., parole revocation hearings) which are conducted by the Board of Parole. There is no right to be represented by counsel during the hearing to determine eligibility for parole.[1] Schawartzberg v. United States Board of Parole (C.A.2) 379 F.2d 551; cf. Hodge v. Markley (C.A.7) 339 F.2d 973. Petitioner cites Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L. Ed.2d 336, which is not applicable to this kind of hearing but to probation revocation proceedings. Further, there is no requirement that the hearing even be conducted by a member of the Board of Parole, and it may instead be conducted by an Examiner. French v. Ciccone, *supra*. The hearing is to be characterized by informality and, in view of the discretionary power of the Board, the usual rights of due process do not apply. Cf. Lewis v. Rockefeller (S.D.N. Y.) 305 F.Supp. 258. It has been consistently held that the courts have no jurisdiction to review the denial of a parole. In Brest v. Ciccone, *supra*, 371 F. 2d at 982–983, the Eighth Circuit Court of Appeals held that:

"By the language of 18 U.S.C.A. § 4203, the Board of Parole is given absolute discretion in matters of parole. The courts are without power to grant

1. In fact, according to the existing regulations of the Board of Parole, representation at hearings to determine eligibility for parole is forbidden. See 28 C.F.R. § 2.16 to the following effect: "No prisoner, including juveniles and committed youth offenders, appearing at any hearing, other than a revocation hearing, shall be represented by counsel or by any other person. No interviews with the Board or any representative thereof shall be granted to a prisoner unless his name is docketed for a hearing in accordance with Board procedures. The hearings described in this section and the preceding section shall not be open to the public, and the records of all such hearings shall be treated as being confidential and shall not be open to inspection by the prisoner concerned or any other unauthorized person."

a parole or to judicially determine eligibility for parole. Furthermore, it is not the function of the courts to review the discretion of the Board in the denial of applications for parole, or to repass on the credibility of reports and information received by the Board in making its determinations."

See also United States ex rel. Campbell v. Pate (C.A.7) 401 F.2d 55; Boddie v. Weakley (C.A.4) 356 F.2d 242; Berry v. United States Board of Parole (M.D. Pa.) 266 F.Supp. 667; Koptik v. Chappell, 116 U.S.App.D.C. 122, 321 F.2d 388 (stating jurisdiction of the courts should not be exercised to review denial of parole when prisoner is still in a penal institution); Bozell v. United States (C.A.4) 199 F.2d 449. Further, it was held in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, cert. denied Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315, and Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L.Ed.2d 316, that the right to inspect Board files does not apply in Board hearings, even when they involve parole revocation.[2] Petitioner does not therefore state the denial of any of his federal rights by the Board of Parole in denying him a determination of eligibility for parole nor by respondent in accordingly denying his immediate release. Therefore, the petition herein for habeas corpus must be denied.

■■ Petitioner does not, in the petition in this case, state any denial of his federal rights which cause his custody by respondent to be unlawful. The nature of the claims advanced by him, however, would indicate that petitioner may contend that the refusal to grant parole was arbitrary and capricious and an abuse of discretion by the Board. Petitioner does not state such claims in the petition at bar. But such claims, which in most instances would if meritorious not require petitioner's immediate

release from custody, may merit other relief such as the granting of a new parole hearing based upon the Board of Parole's reassessment of petitioner's parole application. Thus, these claims are not properly asserted against the Director of the Medical Center in this federal district court, but are rather claims which can only be asserted against the Board of Parole, the only agency which can grant the appropriate relief. It has been the position of this Court in Langston v. Ciccone, *supra*, that such claims must be filed in the only federal district wherein there is personal jurisdiction of the Board, the District of Columbia. The petition in this cause, however, was originally filed in the United States District Court for the District of Columbia. That court, however transferred the petition to this court under the provisions of § 1404(a), Title 28, U.S.C., which provide:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In the motion of the Government on which the order of transfer was based, the United States Attorney for the District of Columbia cited the 1966 case of Young v. Director, United States Bureau of Prisons (Rossello v. United States Board of Parole), 125 U.S.App.D.C. 105, 367 F.2d 331, in which it was stated that such transfers, which had formerly been impossible, were now possible under the new venue provisions of Section 1391(e), Title 28, U.S.C. (added November 2, 1966) providing for *venue* in suits against federal officers and agencies in the district of plaintiff's residence. That statute, however, does not provide for nationwide *jurisdiction* of out-of-district officers and agencies. Assuming without holding that a federal prisoner's place of residence is the federal peniten-

---

2. Further, under the regulations of the Board, 28 C.F.R. § 2.16, the records of the hearing are confidential. See note 1, *supra*. Under § 2.14 of the same reg-

ulations, the Board is required to consider reports "assembled by all the services which shall have been active in the development of the case."

tiary in which he is imprisoned (an assumption which appears to be against the weight of authority),[3] the transfer in this case may have been proper because petitioner (as had the petitioner in *Young, supra*) had asked for his immediate release. Thus, jurisdiction (as well as venue) might be proper here because the petition could be treated as a petition for habeas corpus against a respondent Director of the Medical Center who is resident in this District, or, conceivably, as an action for mandamus to compel the Board of Parole to issue a certificate of parole, for which type of action this Court would have the personal jurisdiction of the Board expressly granted it by § 1361, Title 28, U.S.C. But in habeas corpus or other actions which seek or require less than the release of the petitioner from custody, so that the in-district custodian cannot be deemed a proper respondent, this Court has no jurisdiction of the Board to enforce any order or judgment which it might issue against it, although venue may be proper under § 1391(e), *supra*. Therefore, inasmuch as the petition herein does not state the denial of any federal right which would entitle petitioner to immediate release, it can be denied by this Court. Otherwise, for relief which only the Board of Parole can grant, petitioner should file a successive petition in the United States District Court for the District of Columbia.

It is therefore

Ordered that petitioner be, and he is hereby, granted leave to proceed in forma pauperis. It is further

Ordered that the petition herein for habeas corpus be, and it is hereby, denied.

---

3. The definitions of venue make Section 1391(e) irrelevant in respect to jurisdiction of prisoners as plaintiffs in the district of their confinements. "For venue purposes, a person is a resident only where he is a citizen, is domiciled, and makes his permanent home." 1 Moore's Federal Practice ¶ 0.142 [5.–2],

p. 1484, n. 5. This definition of "resides" applies to Section 1391. *Id.*; see also Cohen v. United States (C.A.9) 297 F. 2d 760, 774, and cases therein cited. A convict ordinarily retains his last former place of residence before his imprisonment. 25 Am.Jur.2d, Domicile § 41, p. 31 (2d ed.).