**Walter LEONARD et al., Plaintiffs,**

**v.**

**MISSISSIPPI STATE PROBATION AND PAROLE BOARD, et al.,**
**Defendants.**

**GC 73–46–S.**

United States District Court,
N. D. Mississippi,
Greenville Division.

Feb. 21, 1974.

David M. Lipman, Miss. Prisoners' Defense Committee, Jackson, Miss., for plaintiffs.

Edwin A. Snyder, Sp. Asst. Atty. Gen., of Miss., Jackson, Miss., for defendants.

## MEMORANDUM OF OPINION

ORMA R. SMITH, District Judge.

### A. PROCEDURAL BACKGROUND

Walter Leonard, an inmate at the Mississippi State Penitentiary, filed this Section 1983 [1] action on behalf of himself and all others similarly situated to redress an alleged deprivation under color of state law of rights, privileges, and immunities secured by the due process and equal protection clauses of the Fourteenth Amendment. Jurisdiction is invoked under 28 U.S.C.A. § 1343(3) and (4). A declaratory judgment is sought pursuant to 28 U.S.C.A. § 2201.

The named plaintiff has alleged that he and the members of the putative class —inmates who have served the minimum portion of their sentences necessary for initial parole eligibility under Mississippi law [2] have been arbitrarily excluded from consideration for parole, or "set off" in prison argot, for periods up to one year solely or partially because their prison files contain records of disciplinary measures imposed for infractions of penitentiary regulations. Moreover, plaintiff has alleged that the infractions occurred, if at all, and the subsequent disciplinary measures were imposed prior to the time minimal due process safeguards were instituted at the Mississippi State Penitentiary pursuant to the mandate of this court in Gates v. Collier. [3] In short, plaintiff alleges that he and other similarly situated have been "set off" or denied the opportunity to be considered and interviewed for parole because of the defendants' reliance, in whole or in part, upon unconstitutional discipline records.

Plaintiff seeks an order enjoining the defendants' future reliance upon pre-*Gates* records when determining whether

---

1. 42 U.S.C.A. § 1983.

2. Section 47–7–3 Miss.Code Ann. (1972).

3. 349 F.Supp. 881 (N.D.Miss.1972).

to consider an inmate for parole; a mandatory injunction directing the defendants to reconsider the parole eligibility of those inmates previously "set off" for pre-*Gates* infractions; and a declaratory judgment adjudging that the defendants' acts, policies, and practices violate rights guaranteed by the United States Constitution.

When the original complaint was filed, only the Mississippi Probation and Parole Board (Parole Board) and its five individual members were named as defendants. With the complaint, plaintiff also filed a motion for a preliminary injunction. He subsequently filed a motion for summary judgment, and the defendants filed a motion to dismiss. On June 28, 1973 the court conducted an evidentiary hearing, received oral testimony, and considered pending motions. After reviewing a transcript of the hearing, the court entered an order on July 31 overruling all motions but, sua sponte, granting plaintiff leave to amend the complaint.

Plaintiff appeared at the hearing after having conducted only minimal discovery. The testimony revealed that the Parole Board does not maintain files which contain records of prison conduct or misconduct. Instead, the Parole Board utilizes the standard inmate files maintained by and under the custody and control of the prison administration. The court concluded that, if any relief were available to the plaintiffs, complete and effective relief could not be granted absent jurisdiction over additional parties. Thereafter, plaintiff amended his complaint by leave of court and added as defendants the Mississippi Penitentiary Board (Penitentiary Board) and its individual members, the prison superintendent, and the Governor of Mississippi. Subsequently, the Governor was dismissed by order of the court.

In addition to adding parties defendant, the plaintiff also expanded the scope of this action. He alleges that the additional defendants utilize the pre-*Gates* discipline record in classifying or reclassifying inmates for camp assignments, in-prison vocational and educational opportunities, and the work release program. He seeks an order requiring the defendants to expunge alleged unconstitutional discipline records from the files of all inmates and to reclassify all members of the class who have been denied the opportunity to participate in work release, job training, and available educational programs because of reliance, in whole or in part, upon pre-*Gates* discipline records.

The action has been submitted to the court upon the transcript of the evidentiary hearing,[4] stipulations, exhibits, and briefs. The cause is now ready for decision.

## FINDINGS OF FACT

1. The Parole Board is charged by law with the duty of administering parole for inmates at the Mississippi State Penitentiary. Section 47–7–1 et seq. Miss.Code Ann. (1972). Once each month the Parole Board reviews inmate files which are maintained by the prison administration to determine (a) whether an inmate is eligible for parole consideration (b) whether an eligible inmate should be scheduled for a parole hearing, or (c) whether, because of discipline problems or other reasons, the inmate should be "set off", i. e., not afforded a parole hearing, for periods generally ranging from three months to one year.

The decision to schedule a parole hearing or grant or deny parole rests within the discretion of the Parole Board. State law, however, sets certain minimal requirements. See, Section 47–7–17, Miss.Code Ann. (Supp.1973).

2. Parole is normally a three stage process in Mississippi. The typical inmate must serve at least one-third of his sentence before he becomes eligible. Second, the inmate must be scheduled for a hearing before the Parole Board. Third, at the hearing the Board must determine that the inmate is a fit candi-

---

4. Rule 65(a)(2), F.R.Civ.P.

date for parole and that parole would promote the interests of society. It is the second stage which forms the basis for this litigation.

3. To determine the second stage, i. e., which inmates will be afforded a parole hearing, the Parole Board reviews the files of inmates three months before they become eligible by statute for parole. The files are maintained by the prison classification officer; he is employed by the superintendent and subject to the authority of the superintendent and the Penitentiary Board.

If the file reveals that an inmate's conduct has conformed to prison requirements and he is otherwise eligible, he may then be scheduled for a full hearing three months later; viz, in the month he first becomes eligible. However, if the file contains evidence of nonconforming conduct, particularly recent infractions, the inmate may, in the discretion of the Parole Board, be "set off" for a period generally ranging from three months to one year. When an inmate is "set off", his file is not again reviewed by the Parole Board until near the expiration of the "set off" period. As a practical matter, the inmate thus forfeits all chance for parole during the "set off" term.

4. The records of disciplinary infractions are maintained on separate sheets in the inmate's file. No differentiation is made between post- and pre-*Gates* offenses. The Parole Board considers the entire record when making its determination. Greater weight, however, is assigned to more recent offenses. The Parole Board does not independently review the files to insure their accuracy, but accepts them at face value.

5. On October 20, 1972 Honorable William C. Keady, Chief Judge of this court, entered a comprehensive opinion and order in gates v. Collier, 349 F. Supp. 881 (N.D.Miss.1972). He determined as a matter of law that prison disciplinary procedures were violative of the due process clause and required penitentiary officials to, inter alia, adopt a set of rules and regulations governing inmate conduct which conformed to minimal standards of due process. 349 F. Supp. 889. These rules and regulations were adopted on January 26, 1973.

6. Walter Leonard is an inmate at the Mississippi State Penitentiary; his present discharge date is August 12, 1975. One-third of his sentence expired on June 17, 1973. From the standpoint of time served, he became eligible for parole on that date. On March 27, 1973, Leonard was notified by the Parole Board that his eligibility for parole had been "set off" or continued for one year from June 1973 "due to prison conduct".

7. Prior to March 27, 1973, Leonard was charged with prison offenses on five occasions, chiefly for refusing to work. Leonard began serving his sentence on May 5, 1972. He was recorded as having breached prison discipline and regulations on May 30, 1972, June 6, 1972, October 16, 1972, December 28, 1972, and March 3, 1973 for an incident which occurred on February 28. The plaintiff was adjudged "not guilty" of the December 28 offense by the prison discipline council.

When the Parole Board determined that the named plaintiff would be "set off" for one year, they placed primary reliance upon the March 3 offense. However, the testimony revealed and the court finds that the Parole Board took his entire record into account, including offenses which occurred prior to January 26, 1973.

8. The Mississippi Penitentiary Board and the Superintendent are responsible for the operation and administration of the Mississippi State Penitentiary. Section 47–5–23, 25 Miss. Code Ann. (1972). The duty of classifying inmates has been delegated by statute to a committee of prison officers and employees. Section 47–5–99 et seq. Miss.Code Ann. (Supp.1973). Classification is a significant factor in the prison. An inmate's classification deter-

mines his "work duties, living quarters, educational, vocational and other rehabilitation programs, and privileges. . . ." Section 47–5–103 Miss.Code Ann. (Supp.1973).

Inmates are initially classified within 40 days of arrival at Camp 9, the reception center. They are initially classified to a particular camp. Each time an inmate is reassigned to another camp, he is, in effect, officially reclassified. Intions are made between pre- and post-Maximum Security Unit (M.S.U.) are not eligible for certain privileges and educational or vocational opportunities.

Inmates are classified after a review of their prison file which contains the disciplinary record. Although several factors are weighed before an inmate is classified or reclassified, his disciplinary record is always considered. Other factors include: the nature of the offense for which the inmate was incarcerated, the severity of the sentence, the prior criminal record, medical evaluation, personal and social factors, and available resources.

The classification committee meets three times each week to review inmate files and classification requests. The committee does not independently review charges of discipline violations, but accepts them at face value. No distinctions are made between pre-and post-*Gate* offenses; inmates are classified on the basis of their total record. Classification is a continuous process. An inmate may be reclassified at any time.

9. Between December 6, 1972 and June 21, 1973, the named plaintiff was reassigned, i. e., reclassified, ten times. On four occasions he was assigned to M.S.U. where he was ineligible for privileges and educational or vocational opportunities. His assignment at the time the record was closed is unclear. Leonard's assignment or classification, like that or all other inmates, is made on the basis of his total record.

10. Work release, in its current form, is a relatively new program at the Mississippi State Penitentiary. Section 47–5–159 et seq., Miss.Code Ann. (Supp.1973). An inmate may qualify for work release through the joint action of the Penitentiary Board and the Parole Board. With the consent of the Parole Board, the Penitentiary Board may place an inmate under the jurisdiction of the former for the purpose of participation in work release. Thereafter, the Parole Board supervises the inmate.

To be eligible for work release, the inmate must satisfy several criteria. One criterion considered is his total prison file, including discipline records. In fact, the inmate must have a relatively unblemished prison record to even become eligible. No distinction is made between pre- and post-*Gates* offenses.

More than 50% of the inmates considered for work release do not clear the first hurdle. Some are not eligible from the standpoint of time served; others have prison records which, in the judgment of the administrators, disqualify them. Inmates, such as the named plaintiff, who have served one-third of their sentence and are thus eligible for parole are apparently not eligible for work release.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter and the parties.

2. In Gates v. Collier, *supra*, at 895, Chief Judge Keady found as a matter of law that "the punishment procedures at [The Mississippi State Penitentiary] fail to comport with . . . minimal requirements of due process. . . ." This holding encompassed procedures whereby inmates were notified of charges and "convicted" of breaches of prison discipline. Insofar as applicable to the present case, we adopt Judge Keady's conclusion.

3. Pursuant to the provisions of Rule 23(b)(2), F.R.Civ.P., this cause may be properly maintained as a class suit. The court finds that the class is

comprised of all inmates who, subsequent to October 20, 1972, were "set off" for parole consideration for any period or who were reclassified or denied consideration for work release or educational and vocational opportunities solely or partially on the basis of prison disciplinary records where the discipline offense occurred on or before January 26, 1973. The fact that the named class representative may not be currently eligible for work release is not solely dispositive of his ability to adequately represent members of the class who were denied consideration for work release. Carr v. Conoco Plastics, Inc., 295 F. Supp. 1281 (N.D.Miss.1969) ; Johnson v. ITT–Thompson Industries, Inc., 323 F. Supp. 1258 (N.D.Miss.1971).

■ 4. This court perceives an apparent distinction between an administrative decision to alter a prisoner's status so as to deny him a potential benefit such as vocational training, privileges, or work release, and a decision to revoke a cognizable and existing benefit such as parole. In the latter case, the state may not presumptively dispossess a prisoner of goods, rights, or privileges he currently enjoys absent due process safeguards. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). However, the full panoply of due process protections does not attach every time the state merely confers a new status on the individual or denies a request for a different status. Scarpa v. United States Board of Parole, 477 F.2d 278 (5th Cir. 1973).

■■ 5. As a general and laudatory principle, the determination of eligibility for parole rests within the discretion of the Parole Board. "[I]t is not the function of the courts to review the discretion of the Board in the denial of [an] application for parole or to review the credibility of reports and information received by the Board in making its determination." Tarlton v. Clark, 441 F.2d 384, 385 (5th Cir. 1971). Absent what the Fifth Circuit has termed "fla-grant, unwarranted, or unauthorized" action by the Parole Board, it is not the function of the courts to review parole eligibility proceedings. Scarpa v. U. S. Board of Parole, supra, 477 F.2d at 283. As the rule is generally defined, "[t]he determination of eligibility for parole is within the sole discretion of the Board of Parole and, absent exceptional circumstances or the denial of a constitutional right, the exercise of that discretion is not reviewable by the courts." Ott v. Ciccone, 326 F.Supp. 609, 611 (W.D.Mo.1970) ; see also, United States ex rel. Harrison v. Pace, 357 F.Supp. 354 (E.D.Pa.1973).

■ 6. The courts are without power to grant parole. Tarlton v. Clark, supra. However, the court has the authority to direct the Parole Board to reconsider eligibility for parole in a proper case. E. g., Tate v. Henderson, 470 F.2d 971 (5th Cir. 1972), cert. den., 410 U.S. 987, 93 S.Ct. 1515, 36 L.Ed.2d 184 (1973).

■ 7. This court is not at liberty to hold and does not hold that, in this case, the facts considered by prison authorities in exercising their decision-making discretion must be determined subject to the full panoply of due process requirements. Scarpa v. United States Board of Parole, supra; United States ex rel. Campbell v. Pate, 401 F.2d 55 (7th Cir. 1968). However, we do conclude that the defendant administrators may not rely, in whole or in part, upon the results of a system already determined by this court to be constitutionally deficient when determining whether to grant or deny access to potential benefits. Compare, Cottle v. Wainwright, 477 F.2d 269 (5th Cir. 1973).

■ We conclude that the defendants' past and future reliance upon such records for these purposes is impermissible. The proper remedy, we conclude, is limited to the specific provisions enumerated below.

8. Within twenty days of this date the parties shall present to the court for

entry an order containing the following provisions:

A) enjoining the defendants' future reliance, in whole or part, upon records of pre-January 26, 1973 discipline offenses when determining eligibility for parole consideration, work release, educational and vocational training, and inmate classification;

B) requiring the defendants within a reasonable and definite period, to remove pre-January 26, 1973 discipline records from the files of all inmates; pre-January 26, 1973 discipline records shall not be construed to include records of conviction in a court of competent jurisdiction for offenses committed while incarcerated, i. e., escape, assault upon another inmate, sodomy, etc.;

C) if the parties can agree that the defendants may retain pre-January 26, 1973 discipline records for any beneficial rehabilitative purposes, such as psychiatric profiles of inmates, the order shall set out the same and specify the conditions under which the records may be maintained and utilized, all subject to approval of the court;

D) requiring the defendants, within a reasonable length of time in view of available administrative resources, to reconsider or reclassify all members of the class who, subsequent to October 20, 1972, were "set off" for parole consideration or denied consideration for work release or educational and vocational benefits solely or partially on the basis of pre-January 26, 1973 discipline records;

E) directing that the class be notified of the entry and content of this opinion by an appropriate and effective method;

The court reserves the right to alter, amend, or reject any portion of the proposed order. If the parties are unable to agree upon the particulars, they may separately submit proposed orders to the court within the period indicated.