544 So.2d 810 (1989)
STATE of Mississippi
v.
Cathy READ.
No. 58458.
Supreme Court of Mississippi.
May 3, 1989.
*811 Mike Moore, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellant.
Richard H. Wilson, Brandon, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
Cathy Read petitioned the County Court of Rankin County on April 21, 1987, for a Writ of Habeas Corpus. Following an evidentiary hearing, Judge James W. Smith, Jr., granted the petition, and issued an order on May 22, 1987, directing the Parole Board to immediately release Read from the custody of the Mississippi Department of Corrections.
The State of Mississippi appealed this order on June 5, 1987, pursuant to § 99-39-25(1) of the Mississippi Post-Conviction Collateral Relief Act. When the Parole Board failed to take action, Read filed a Motion for Contempt on July 28, 1987. Following hearing on the Motion for Contempt on August 7, 1987, the County Court of Rankin County ordered Read released on $5,000.00 bail pending appeal of the original writ of habeas corpus.
The case is now before this Court on appeal of the State, and the following issues are presented:
1. Did the County Court of Rankin County have jurisdiction to entertain this cause;
*812 2. Did the lower court err in finding that the State of Florida lost jurisdiction of the petitioner; and
3. Did the lower court err in ordering the Parole Board to grant the immediate release of petitioner.
Cathy Read was convicted on June 4, 1981, in the Circuit Court of Jackson County, Mississippi, of possession of a controlled substance with intent to deliver. She was sentenced to serve ten (10) years in the custody of the Mississippi Department of Corrections. Read promptly appealed this conviction to the Mississippi Supreme Court, and was released on bond during the pendency of this appeal.
While out on her appeal bond, Read was arrested in Escambia County, Florida, for drug related charges on or about January 27, 1983. She remained incarcerated in Escambia County Jail without benefit of bail, and she subsequently entered a plea of nolo contendere to the charges and was sentenced on July 13, 1983, to serve a term of five (5) years in the custody of the Florida Department of Corrections. This sentence was to run consecutively with Read's Mississippi sentence.
Meanwhile, on March 23, 1983, Read's conviction was affirmed on direct appeal by the Mississippi Supreme Court. Read v. State, 430 So.2d 832 (Miss. 1983).
On or about July 29, 1983, while still in Escambia County Jail, Read was released to the custody of a bail bondsman by the name of George Hitt. Hitt obviously was liable on Read's appeal bond in Mississippi. Read was released without benefit of extradition or other hearing, and returned by Hitt to the Jackson County Detention Center. On this day, Read began serving her original ten year sentence in the custody of the Mississippi Department of Corrections.
Following her release from Escambia County, Florida, the State of Florida lodged a detainer against Read here in Mississippi. Subsequent to this time, on or about August 28, 1985, and on several occasions thereafter, Read was offered parole on the condition that she waive extradition to the State of Florida pursuant to that State's detainer. She refused each time to waive extradition and the offer of parole was accordingly withdrawn.
Around February 13, 1986, the State of Florida instituted extradition proceedings with the State of Mississippi in regard to Read. However, Read's first notice of these proceedings was at the hearing below. The extent of these proceedings is not shown by either the briefs or record.
Following her transfer to the Rankin County facility, Read petitioned for, and was granted, a writ of habeas corpus by the County Court of Rankin County on May 22, 1987. The State appealed, and in response to the Parole Board's failure to release Read, Read filed a motion for contempt. On August 7, 1987, the county court ordered Read released on $5,000.00 bail pending the State's appeal.
Following this action, the State filed in this Court a Motion for emergency relief under Rule 32 on August 12, 1987, alleging in essence that the Rankin County Court had no jurisdiction to entertain the writ of habeas corpus because the petition was in reality a motion under the Post-Conviction Collateral Relief Act. Thus, the State complained of extreme emergency in the alleged unlawful release of Read. This motion for emergency relief was denied on August 14, 1987.

I.

DID THE COUNTY COURT OF RANKIN COUNTY HAVE JURISDICTION TO ENTERTAIN THIS CAUSE?
The jurisdictional question is controlled by the Mississippi Post-Conviction Collateral Relief Act, Miss. Code Ann. § 99-39-1, et seq. (Supp. 1988), effective April 17, 1984. First by implication and then expressly, this Court has held that it will adhere to the provisions of that Act. See McClendon v. State, 539 So.2d 1375, 1377 (Miss. 1989). The Act rendered the County Court of Rankin County without jurisdiction to entertain Read's petition.
Read filed with the County Court of Rankin County a pleading styled "Petition for a Writ of Habeas Corpus," on April *813 21, 1987, more than three years after the effective date of the Post-Conviction Relief Act. Although Read was convicted in 1981, and that conviction affirmed on direct appeal in 1983, the substantive portions of the collateral relief act are applicable to Read's petition. See Irving v. State, 498 So.2d 305, 308-09 (Miss. 1986); Bobkoskie v. State, 495 So.2d 497, 499 (Miss. 1986); McDonall v. State, 465 So.2d 1077, 1078 (Miss. 1985). Furthermore, the waiver and procedural bar provisions of the act are applicable even though Read was tried and convicted prior to the effective date of the act. Dufour v. State, 483 So.2d 307, 308 (Miss. 1985).
Our acceptance of the Post-Conviction Collateral Relief Act effectively supplants the prior statutory and rule versions of the writ of habeas corpus. See Unif.Crim.R. Cir.Ct.P. 8.07; Miss. Code Ann., § 11-43-3 (Supp. 1988); Miss. Code Ann., § 99-39-3(1) (Supp. 1988); Miss.Sup.Ct.R. 22. Insofar as the Act affects today's case, it introduces nothing new into our jurisprudence. Hence, retroactivity is permissible.
Applying the act presently, it is clear that Read's petition in the County Court of Rankin County should be treated as a motion under Mississippi Code Annotated, § 99-39-5(1)(g) (Supp. 1988). That section authorizes a post-conviction motion in the nature of collateral review by Read since she was in custody under a Mississippi conviction and claims that she is "unlawfully held in custody." In addition, the issue raised by Read's petition is not procedurally barred since it could not "in practical reality ... have been raised at trial or on direct appeal," and the issue is not otherwise waived. Miss. Code Ann., §§ 99-39-3(2), -21 (Supp. 1988).
Having established that Read's so called Petition for Writ of Habeas Corpus is to be treated as a motion under Section 99-39-5(1)(g) of the Act, we next address the jurisdiction of the county court to entertain the motion. Section 99-39-7 absolutely requires that Read's motion first have "been presented to a quorum of the Justices of the Supreme Court of Mississippi ... and an order granted allowing the filing of such motion in the trial court." This rule applies because Read's case was appealed and affirmed by this Court on direct appeal.
Furthermore, the State appealed the initial judgment ordering the release of Read pursuant to Section 99-39-25(1), and by virtue of Section 99-39-25(2), perfection of appeal by the State operates as supersedeas and an automatic stay of the trial court judgment. Thus, while the County Court of Rankin County not only improperly entertained Read's initial Petition for Writ of Habeas Corpus, it also improperly entertained Read's subsequent Motion for Contempt which was brought on account of the Parole Board's failure to immediately release Read pursuant to the initial court order. While Section 99-39-25(3) authorizes the trial court to release the prisoner on bail in accordance with Rule 7.02, Uniform Criminal Rules of Circuit Court Practice, this section obviously proceeds on the assumption that the post-conviction relief proceedings are founded upon adequate jurisdiction.
Therefore, the orders of the County Court of Rankin County granting Read a Writ of Habeas Corpus, and subsequently allowing her release on bail pending appeal by the State would ordinarily be reversed.
However, even though the county court had no jurisdiction, the case is here, and in the interest of judicial economy, we will treat Read's petition as though it were filed originally with this Court under Section 99-39-7 of the Post-Conviction Collateral Relief Act.

II.

DID THE LOWER COURT ERR IN FINDING THAT THE STATE OF FLORIDA LOST JURISDICTION OF THE PETITIONER?
In granting Read a writ of habeas corpus, the county court judge held, "that the State of Florida absolutely and unequivocally waived its right and lost jurisdiction of [Read] when they voluntarily, without authority or otherwise ... turned [Read] over to some one who really wasn't even an agent of the State of Mississippi at *814 the time." Thus, he ordered the immediate release of Read, thereby ignoring the Florida detainer, the existing extradition proceedings, and Read's valid conviction and sentence in the State of Florida. The county court judge determined that Florida's failure to provide Read with an extradition or other hearing before releasing her to the custody of a Mississippi bail bondsman caused that sovereign to lose all jurisdiction over Read.
The State argues that the Mississippi Courts cannot adjudicate the question of whether Florida had unequivocally surrendered Read to Mississippi under circumstances amounting in effect to a pardon or commutation of sentence. This determination, the State argues, is one that must be made by the Florida Courts. United States, Ex Rel Tyler v. Henderson, 453 F.2d 790 (5th Cir.1971), is offered in support. In Henderson, the defendant Tyler was convicted and sentenced in Mississippi. After serving one month, Tyler was turned over to North Carolina authorities to serve a sentence which had been imposed in that state. Id. at 791-92. Ultimately, Tyler was released from North Carolina and traveled to Louisiana, where he was convicted and sentenced to five years in the Louisiana State Penitentiary. Id. at 792. When he completed that term, he was faced with a detainer filed by the State of Mississippi. Tyler resisted extradition by filing an application for writ of habeas corpus in Louisiana state court. After unsuccessfully exhausting state remedies, Tyler filed his application in U.S. District Court for the Eastern District of Louisiana, which denied his application. Id. at 792-93.
In affirming the district court on result, the Fifth Circuit vacated the district court findings for the reason that "it was ... error for that court to adjudicate the question of whether Mississippi had surrendered Tyler to North Carolina under circumstances amounting to the equivalent of a pardon." Id. at 793. In a specially concurring opinion, Circuit Judge Morgan acknowledged that the district court had exceeded its bounds, stating that "Tyler is attempting to assert the merits of his contentions in the court system of the asylum state (Louisiana). Whether his extradition to North Carolina by the Mississippi authorities and his release by Mississippi before expiration of his sentence constituted a waiver of jurisdiction over him must first be tried in the demanding state (Mississippi)." Id. at 794.
Similarly, in Tims v. Sheriff of Clarke County, Springfield, 550 F. Supp. 843, 845 (S.D.Ohio 1982), it was stated that the question of whether the surrender of a prisoner by one sovereign to another amounts to a loss of jurisdiction is peculiarly a matter of state law. See also, Helm v. Jago, 588 F.2d 1180, 1181 (6th Cir.1979). Thus, the question of whether Florida's surrender of Read to Mississippi before completion of her Florida sentence amounts to a waiver of jurisdiction, or in effect, a pardon or commutation of sentence, must first be tried by the courts of Florida.
Therefore, assignment No. II of the State has merit, and we reverse the finding of the County Court of Rankin County that the State of Florida lost jurisdiction over Read, and dismiss the case without prejudice to Read's right to present this claim to a proper Florida court.

III.

DID THE LOWER COURT ERR IN ORDERING THE PAROLE BOARD TO GRANT THE IMMEDIATE RELEASE OF READ?
The lower court found specifically that Read had been granted parole on several occasions, and that said parole was withdrawn in each case before her release because of Read's refusal to waive extradition to Florida. In essence, the court found that Read was granted parole to detainer only, and once the detainer was found invalid by the lower court, the Parole Board was ordered to release Read immediately.
At the outset, it is clear that what the Parole Board attempted to do was beyond its statutory authority, and consequently, void from the beginning. Shillingford v. Read, 312 So.2d 717 (Miss. 1975); Miss. Code Ann., § 47-7-17 (Supp. 1988). The Parole Board attempted to grant Read her release to detainer only; that is, it was a specific condition of Read's so-called parole that she be released to the State of Florida only. *815 Likewise, in Shillingford, the prisoner's release was to detainer only. As stated by the court:
It is perfectly apparent to us that Shillingford's release to federal detainer only was not a parole but was really a transfer of custody from the State Penitentiary to a Federal Penitentiary. The State Probation and Parole Board did not even consider Shillingford from the standpoint of rehabilitation and a return to society.
312 So.2d at 719.
After noting that the applicable statute, § 47-7-17, does not provide for a release to detainer only, this Court held that what "the Parole Board did in this case is void from the beginning ..." 312 So.2d at 719-20.
The only difference in our case is that the board did not succeed in completing the transfer. However, they did condition parole eligibility on Read's willingness to voluntarily release herself to detainer only, and as noted, nothing in the statute providing for the granting of parole allows such a condition be attached. See § 47-7-17 (Supp. 1988).
To compound the error, the lower court issued an order which in effect removed the condition of eligibility attached by the Parole Board, and granted Read parole. It is well recognized that the power to grant parole is a discretionary function of the Parole Board accorded by statute. In Leonard v. Miss. State Probation & Parole Board, 373 F. Supp. 699 (N.D.Miss. 1974), reversed on other grounds, 509 F.2d 820 (5th Cir.1975), cert. denied, 423 U.S. 998, 96 S.Ct. 428, 46 L.Ed.2d 373 (1975). It was recognized that the courts "are without power to grant parole." 373 F. Supp. at 704. Determining the eligibility for parole is peculiarly and solely a discretionary function of the Parole Board, and absent exceptional circumstances, "the court [only] has the authority to direct the Parole Board to reconsider eligibility for parole in a proper case." Id.
Consequently, the Parole Board erroneously conditioned Read's parole on her willingness to voluntarily submit to the custody of her detainer, and the lower court compounded the error by removing this condition and ordering the immediate release of Read. At the most, the lower court could have ordered the Parole Board to reconsider Read's eligibility from the standpoint of rehabilitation and a return to society pursuant to the statute. Even then, however, the matter of the detainer lodged against Read by the State of Florida stands in the way.
Therefore, this assignment of error has merit, and the lower court's order granting Read's immediate release is reversed, and the case dismissed without prejudice.
Read's petition was improperly entertained by the County Court of Rankin County for the reason that it is governed by the provisions of the Post-Conviction Collateral Relief Act, and is subject to the requirement that Read first file a motion in this Court for permission to proceed in the trial court. Notwithstanding, the lower court erred in concluding that the State of Florida lost jurisdiction over the petitioner for the reason that the effect of Florida's release of Read to the State of Mississippi is a question to be answered in the first instance by a proper court of the State of Florida. Further, the Parole Board was without statutory or other authority to condition Read's parole on her voluntarily submitting herself to the custody of the State of Florida, and the lower court compounded this error by entering an order which in effect granted Read parole.
Therefore, the orders entered in this cause by the County Court of Rankin County are reversed, and this cause is dismissed without prejudice to allow for the initiation of proper proceedings before the proper tribunals, consistent with the opinion in this case.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.