John Graham SNYDER et al.,
Plaintiffs,

v.

**UNITED STATES BOARD OF PA-
ROLE et al., Defendants.**

Civ. A. No. 74–M–230.

United States District Court,
D. Colorado.

Oct. 30, 1974.

C. Thomas Bastien and Richard L. Nathan of Tallmadge, Tallmadge, Wallace & Hahn, Denver, Colo., for plaintiffs.

James L. Treece, U. S. Atty., Gary M. Jackson, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM AND ORDER

MATSCH, District Judge.

This case has been submitted on stipulated facts. The issues are moot with respect to plaintiffs Richard L. Garnett and Jeffrey Bruce Wolf because they have been released. The other plaintiffs are presently incarcerated in the Federal Youth Center (a facility operated by the Bureau of Prisons) in Englewood, Colorado pursuant to sentences imposed under the Youth Corrections Act, 18 U.S.C. § 5010(b).

John Graham Snyder entered a plea of guilty to distribution of cocaine in the United States District Court for the District of Colorado. He entered the F. Y.C. on or about September 5, 1973 and soon thereafter he appeared before a parole examiner. The Plaintiff Snyder has been informed that he is not scheduled for another institutional review hearing until November 1975. He has had two jobs since his arrival at the institution. The first job was as a clerk for the institution's work study office from September 15, 1973 until April 1, 1974. Since then Snyder has been a driver for the institution and as such he spends most of his days driving fellow inmates to and from outside obligations. Snyder has had no negative incident reports since the outset of his confinement.

Joseph Scott Helma entered a guilty plea to distribution of cocaine in the United States District Court for the District of Colorado, and he began serving his sentence at the F.Y.C. on or about August 30, 1973. Helma appeared before the Parole Board and was scheduled for an institutional review hearing in March, 1975. He worked full time at the institution's commissary for five months, and he was then approved for study release. For three days a week Helma audited courses at the University of Colorado Denver Center while working as a clerk in the institution's work study office. In May of 1974, Helma became a full-time student at the University of Colorado, Denver Center. Currently Helma remains a full-time student and, additionally, works fifteen hours per week in the C. U. Engineering Department of Calibration Laboratory. Plaintiff Helma has had no negative incident reports since the outset of his confinement.

Ronald Vernon Vallery entered a plea of guilty to distribution of cocaine in the United States District Court for the District of Colorado. He entered the F.

Y.C. on or about September 5, 1973, and he was scheduled for an institutional review hearing in July of 1975. Vallery worked in the institution's records office until May of 1974 when he was given a job as the work release driver and has held that job ever since.

On November 19, 1973 the Board of Parole published a statement of general policy in the Federal Register, which included rules and regulations relating to parole release of federal prisoners. 38 Fed.Reg. No. 222, Part III. These rules and regulations include a table designated as "Table II—Youth Guidelines for Decision Making" which sets forth a range of months constituting the customary time to be served before release based upon a combination of offense severity and offender characteristics. Examples of offense severity are set out on the vertical axis of this table, and different gradations of parole prognosis are set out on the horizontal axis. These gradations from "very good" to "poor" are the score given to a particular offender by the application of "salient factors" which are set out as objectively ascertainable facts based upon computer prepared experience tables relating to the risk of recidivism. These facts include prior convictions, whether auto theft was involved in the commitment offense, educational level achieved, history of drug dependence and other matters.

The plaintiffs' crime is rated as "very high" in this table, and each plaintiff has "very good" offender characteristics. Accordingly, each plaintiff comes within a range of 20 to 27 months confinement.

The plaintiffs complain that the application of these guidelines has the effect of altering their sentences into determinate periods in violation of the spirit, purpose, and legislative intent of the Youth Corrections Act. They ask for a judgment declaring this system of parole consideration to be a denial of due process and an arbitrary action by the Board of Parole.

Congress created the Board of Parole and gave it a broad discretion. Under the applicable statutory authority, 18 U.S.C. § 4203(a), the only legislated standards are whether there is a reasonable probability that the prospective parolee will live and remain at liberty without violating the law and whether the release is compatible with the welfare of society. It is not the function of the courts to interfere in the exercise of that discretion. Earnest v. Moseley, 426 F.2d 466 (10th Cir. 1970); Scarpa v. U. S. Board of Parole, 477 F.2d 278 (5th Cir. 1973); Brest v. Ciccone, 371 F.2d 981 (8th Cir. 1967).

The decisions of the Board of Parole are reviewable, however, where it has acted in an arbitrary or capricious manner, where it has abused its discretion, or where there is a denial of a constitutional right. United States ex rel. Harrison v. Pace, 357 F. Supp. 354 (E.D. Pa. 1973). The scope of judicial review is that set forth in the Administrative Procedure Act, 5 U.S.C. § 706. King v. United States, 492 F.2d 1337 (7th Cir. 1974). There can be no question but that the adoption of guidelines for the exercise of parole discretion has important advantages in developing a consistent policy to aid hearing examiners in making their decisions. Fairness is perceived in dealing with similar persons in similar situations in similar ways. The use of these guidelines may be assumed to have a significant impact on reducing the effects of disparate sentencing, and that is one of the stated purposes of their adoption. Thus, the use of some standards may well be an important advance in criminal justice.

The difficulty presented by this case is the contradiction between the board's policy of comparability and the congressional intent to individualize the treatment of young offenders through the use of indeterminate sentences under 18 U.S.C. § 5010(b).

We have been reminded recently by the United States Supreme Court of the importance attached to this statute.

In ruling that the sentencing judge must make it clear that he has considered the option of treatment under the act and rejected it before imposing an adult sentence on a defendant under age 22, the Court in Dorszynski v. United States, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) emphasized the objectives of the Youth Corrections Act and said at page 3048:

> An important element of the program was that once a person was committed for treatment under the Act, the execution of sentence was to fit the person, not the crime for which he was convicted. Classification agencies were to be established by the Director of the Bureau of Prisons to receive and study the person committed and make recommendations to the Director as to appropriate treatment. . . .
>
> In addition to institutional treatment, the Division was empowered to order conditional release under supervision at any time to those committed under the Act, with federal probation officers providing the supervision. . . ."

The "treatment" to be given is defined in 18 U.S.C. § 5006(g) as follows:

> "Treatment" means corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies of youth offenders;

The Youth Corrections Act permits the court to sentence the youth offender for treatment and supervision "in lieu of the penalty of imprisonment otherwise provided by law. . . ." 18 U.S.C. § 5010(b). Periodic examinations and reexaminations are to be made of all committed youth offenders, and the Director of the Bureau of Prisons must report to the Youth Correction Division of the Board of Parole with respect to each such offender as the Division may require. 18 U.S.C. § 5016.

What is disturbing in the present case is that while it is conceded that plaintiffs Snyder, Helma and Vallery all have the highest salient factors score possible for them, each of them was given a lengthy continuance for an institutional review hearing. From the affidavit of the Vice Chairman of the Board of Parole, it appears that Mr. Snyder has only been given an initial parole hearing on November 19, 1973, and he is not scheduled for another hearing until November, 1975. Mr. Helma had his initial parole hearing on November 21, 1973, and his institutional review hearing will be in March, 1975. The initial parole hearing for Mr. Vallery was November 20, 1973, and his institutional review has also been deferred to March, 1975.

The only reason given for establishing these dates was that "after consideration of all relevant factors and information presented, it was determined that a decision outside the guidelines was not warranted. . . ."

Absent any additional explanation of these determinations, a permissible inference is that the board is acting on the basis of the nature of the offense and prescribing minimum terms for narcotics violations. Such an approach would indeed contradict the decision of the sentencing judge. It was for the Court to decide whether to impose a definite term or to use the flexibility of 18 U.S.C. § 5010(b). That judgment having been made, the emphasis must be placed upon treatment and rehabilitation of the offender.

The failure to give reasons for delaying hearings or release has been urged by plaintiffs as a separate basis for relief upon the contention that the result is a denial of procedural due process. It is not necessary to reach that constitutional question because since the filing of this complaint the Court of Appeals, Tenth Circuit, has held that the Administrative Procedure Act requires the Board to give reasons for the denial of conditional freedom on parole. Mower v. Britton, 504 F.2d 396 (10th Cir. filed

September 4, 1974). In so ruling, the Court followed the precedent set by the Second Circuit in King v. United States, supra.

Counsel for the defendants in the instant case have advised that there has been a change in policy and that reasons are now being given for the denial of applications for parole. That, however, is of no value to these plaintiffs who must wait for many months for an institutional review hearing.

In summary, the adoption of guidelines by the Board of Parole is not, in itself, an arbitrary and capricious act, and the use of such guidelines is a matter properly within the discretion given to that agency. It must also be concluded, that these three plaintiffs have not been given adequate explanations of the refusal to consider their release on parole prior to the dates set for their institutional review hearings. Moreover, it does not appear that the Board is following the requirement of periodic reports under 18 U.S.C. § 5016. The Court has jurisdiction to correct these omissions by the entry of an order in the nature of mandamus directing the Board of Parole to cause its hearing officers to consider the plaintiffs herein as having made written applications for parole and to set forth reasons for any decisions made thereon. 28 U.S.C. § 1361. Such statements must be more than mere conclusions that there is no basis for deviating from the guidelines. They must, at a minimum, relate to the adjustment and rehabilitative efforts made by these plaintiffs within the institution. By taking such action, this Court expressly recognizes that the determination of release dates is solely within the authority of the Board.

Accordingly, it is ordered that within sixty days the defendants shall take appropriate action to reconsider the times set for institutional review hearings for the plaintiffs herein, and in the event of a decision denying release, they shall provide written statements of the reasons for such action.