UNITED STATES of America ex rel.
Candido U. MAYET, Plaintiff,

v.

Maurice J. SIGLER, Chairman, United
States Board of Parole, et al.,
Defendants.

Civ. No. 75-1227.

United States District Court,
M. D. Pennsylvania.

Nov. 26, 1975.

Candido U. Mayet, pro se.

Harry A. Nagle, Lewisburg, Pa., for defendants.

ORDER

MUIR, District Judge.

The background of this Order is as follows: On October 7, 1975, Mayet filed a petition for a writ of habeas corpus challenging the U.S. Board of Parole's use of decision-making guidelines in the determination of when prisoners sentenced under the Youth Corrections Act will be released on parole. Mayet was sentenced as a Youth Offender under 18 U.S.C. § 5010(b) on February 1, 1974. On January 20, 1975, he appeared before the Board of Parole and was refused parole on the basis of the guidelines which will be discussed in detail below. His case was continued by the Board until May, 1976. This review date was later changed to February, 1976.

The guidelines in question are found in 28 C.F.R. § 2.20. They state the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. There are three tables of guidelines, one of which is used specifically for offenders sentenced under the Youth Corrections Act. § 2.20(c) states that the time ranges are merely guidelines and that where circumstances warrant decisions outside the guidelines may be rendered.

The Board decided that Mayet has a high salient factor score which reflects a very good parole prognosis. However, this is counterbalanced by a very high severity of offense rating. The combination of these two factors indicates a 20–27 month period of incarceration before Mayet would normally be considered for release on parole.

 Such guidelines, which utilize an analysis of the prisoner's offense as a critical factor in determining how long he will be incarcerated, violate the purpose of the Youth Corrections Act. The Board of Parole has a duty to consider prisoners sentenced under its provisions for parole at any time. The history of the Act shows that the prisoner's response to so-called treatment and his supposed rehabilitation are the primary considerations to be used in determining when a Youth Offender should be released on parole. 1950 U.S. Code Congressional Service, page 3985.

In a recent discussion of the Youth Corrections Act, the United States Supreme Court in *Dorszynski v. United States*, 418 U.S. 424, 434, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974), stated, "An important element of the program was that once a person was committed for treatment under the Act, *the execution of sentence was to fit the person, not the crime for which he was convicted.*" (Emphasis added). Although the holding in *Dorszynski* was limited to a pronouncement that District Judges must find that youth offenders will not benefit from treatment under the Youth Corrections Act before they may be given regular adult sentences, the quoted language nevertheless supports the historical analysis of the Act which places great stress on treatment and rehabilitation. Thus, the guidelines, which take offense severity into account as a critical factor in determining how long a Youth Offender will be incarcerated, violate the purposes of the act and are illegal.

The Government has cited *LoCicero v. Day*, et al., Civil No. 1144 (E.D.Kentucky, February 15, 1974) as authority that the Board's use of the guidelines in question is not arbitrary or capricious. The Court is not persuaded to follow the reasoning in *LoCicero*.

▉ Consequently, because the parole release guidelines contravene the purposes of the Youth Corrections Act, their use to deny Mayet parole was invalid. A new parole consideration for Mayet will be ordered.

Now, therefore, an appropriate order shall issue granting Mayet relief.