Ronald Steven COX, Petitioner,

v.

Maurice SIGLER, Chairman, U. S. Board of Parole, Respondent.

Civ. No. 75–188–C3.

United States District Court,
D. Kansas.

March 18, 1976.

Mary K. Briscoe, Asst. U. S. Atty., Tope-
ka, Kan., for respondents.

Ronald Steven Cox, pro se.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This is a habeas corpus action in which
petitioner alleges he was illegally denied
two points on the Salient Factor Test ad-
ministered by the Parole Board. The Court
previously issued an order to show cause in
accordance with the provisions of 28 U.S.C.
§ 2243. Respondent filed an answer and
return. Petitioner thereafter filed an addi-
tional pleading in the nature of a traverse
to the answer and return. After careful
review of these pleadings the Court con-
cludes that no underlying factual disputes
exist which would require a formal hearing
in the matter. Rather, the sole issue to be
decided is whether the Parole Board abused
its discretion in denying petitioner points
under Item C and Item I of the Salient
Factor Test.

Initially, the Court would observe
that the determination of parole eligibility
lies within the sound discretion of the Pa-
role Board. *Ott v. United States Board of
Parole,* 324 F.Supp. 1034 (W.D.Mo.1971);
*Snyder v. U. S. Board of Parole,* 383
F.Supp. 1153 (D.C.Colo.1974). Courts do
not ordinarily interfere with the Board in
its exercise of this discretion, but Board
decisions are reviewable where the Board
has acted arbitrarily and capriciously or has
abused its discretion. *Snyder v. U. S.
Board of Parole,* supra.

Item C on the Salient Factor Test pro-
vides that an inmate will be given one point
if his age at the time of first commitment
was 18 years or older. An inmate receives
no points if he was under age 18 at the time
of his first juvenile or adult commitment.
Respondent explains that "the underlying
dimension of Item C is that a prisoner's
parole prognosis or likelihood of success on
parole is greater if his age at the time of
first commitment was eighteen or over."
Respondent further states that this item is
included in the test as a result of a number
of studies on the nature of recidivism.

Neither party disputes the fact that peti-
tioner's age at the time of first commitment
was under 18 years. A classification study
prepared by the Bureau of Prisons indicates
that he had four youth commitments begin-
ning in 1960. While acknowledging these
commitments, petitioner contends that all
legal proceedings against him prior to his

18th birthday were unconstitutional for lack of legal counsel at the time of trial and that the Parole Board acted contrary to law in introducing unconstitutional convictions against him to enhance his probable length of confinement.

 Respondent makes no claim that petitioner was afforded counsel at any juvenile proceedings against him or that he knowingly and intelligently waived his right to counsel. Rather, respondent states that records which would establish the truth or falsity of petitioner's claim have been destroyed. Respondent argues that the Parole Board is entitled to rely on the validity of state judicial decisions which have not been overturned by any state or federal post-conviction proceedings. The Court agrees. As an administrative body, the Board of Parole should not be burdened with proving the constitutional validity of prior adjudications of a court of law, whether federal or state. A prisoner wishing to challenge the constitutionality of a state conviction should first seek redress through the sentencing state's post-conviction remedies. If these remedies are exhausted and no relief has been obtained, he may then institute habeas corpus proceedings in federal court.

 The Parole Board should not be required to relitigate with a prisoner issues determined against him in other forums. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Board's reliance on state convictions not found to be constitutionally deficient in any post-conviction judicial proceedings does not constitute abuse of its discretion, nor can such reliance be characterized as arbitrary and capricious so as to warrant judicial interference in the Board's decision to deny petitioner a point in Item C of the Salient Factor Test. A different result could be anticipated if petitioner's juvenile commitments were challenged in a proper judicial forum and found to be constitutionally infirm, but the Parole Board nevertheless persisted in using such commitments to enhance petitioner's period of confinement.

An inmate is given one point on Item I of the test if he has a release plan to live with his spouse and/or his children. According to respondent the underlying rationale of this item is that "a prisoner's parole prognosis or likelihood of success on parole will be increased if he is released to an environment in which he has a socially stable relationship." Respondent explains that an inmate may be given a point on this item if his spouse is a common-law wife only if a stable post-relationship is evident.

The affidavit of pre-release analyst Patricia L. Smith indicates that the Parole Board was aware of petitioner's claimed common-law relationship with Carol Gammon at the time of his initial parole hearing on April 15, 1975. It seems clear that the Board considered petitioner's claim on the merits and rejected it, finding that the relationship was not a socially stable one which might enhance petitioner's likelihood of success on parole.

 As previously noted, the Parole Board has wide latitude in resolving disputed issues of fact. *Kohlman v. Norton,* 380 F.Supp. 1073 (D.Conn.1974). In reviewing a Board finding, the Court determines only if the decision is so lacking in evidentiary support as to be arbitrary and capricious or to amount to an abuse of discretion.

On April 15, 1975, the Board was aware that petitioner had lived in a common-law relationship prior to his commitment in March, 1971; that he first met Carol Gammon on October 31 or November 1, 1974, only six days after being mandatorily released from the 1971 commitment; that he lived with Ms. Gammon and her roommate for eighteen or nineteen days; that on November 18, 1974, he was arrested and incarcerated for committing a bank robbery. Central file records and the affidavit of Roger Stafford, Senior Case Manager in the Classification and Parole Department at Leavenworth, reveal that Carol Gammon had been entered on the approved visitor's list as petitioner's common-law wife. This entry was made no later than February 6, 1975, two months prior to the parole hearing. Stafford avers that the entry was

made on petitioner's and Carol Gammon's word. Insofar as the Court can determine, the fact that Carol Gammon had taken required pre-marital blood tests in December, 1974, was not brought to the Board's attention.

 Petitioner's Exhibits C–1 through C–6 suggest that he has sent practically all of his prison earnings to Carol Gammon, apparently for her support. He relies heavily on these payments as evidence of his intent to maintain a continuing common-law relationship with her. The Court would note, however, that the payments did not commence until May 1, 1975, a date subsequent to his parole hearing and after notice of the Board's decision had been sent to him. Since this information was not before the Board and could not have been before it at the time the decision was made to deny petitioner a point under Item I, the payments would have no relevance in determining the propriety of the Board's action.

At the time of the parole hearing, evidence before the Board tending to establish the stability of petitioner's relationship with Carol Gammon was minimal. His prior common-law relationship with another woman and the brief period of acquaintance with Ms. Gammon prior to his incarceration for the bank robbery offense militated against their having a socially stable relationship which might enhance petitioner's likelihood of success on parole. Having carefully considered this matter, the Court concludes that the Parole Board's denial of a point under Item I was not so lacking in evidentiary support as to be arbitrary and capricious or to constitute an abuse of discretion.

IT IS THEREFORE ORDERED that the action be dismissed and all relief be denied.