**Arthur Thomas PAGE, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 76–2225–Civ–GY.**

United States District Court,
S. D. Florida,
Miami Division.

March 18, 1977.

Jerome J. Bornstein, c/o ACLU Foundation of Florida, Inc., Orlando, Fla., for petitioner.

Harrison T. Slaughter, Jr., Asst. U. S. Atty., Orlando, Fla., for respondent.

## ORDER

GEORGE C. YOUNG, Chief Judge.

This cause is before the Court for consideration of the petition of Arthur Thomas Page for a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). Petitioner contends that he is being wrongfully detained in violation of the spirit and provisions of the Youth Corrections Act, 18 U.S.C. § 5005 et seq., and of the intentions of this Court in sentencing him.

Petitioner was sentenced by this Court on October 24, 1974, but began service of his sentence on July 24, 1975, after denial of his appeal by the Fifth Circuit. Petitioner was sentenced under the Youth Corrections Act, § 5010(b), to an indeterminate term. On November 17, 1975, in response to a motion of petitioner to reduce the sentence imposed, this Court said:

"This Court has been advised that Mr. Page has been transferred to the Drug Abuse Unit and is now receiving counseling regarding his drug problem. The Court is further advised that Mr. Page's present attitude is good and the present program is appropriate. The Court is also advised that for the program to be effective in the goal to cure Mr. Page of his drug problem that a certain minimal time of participation is required.

Considering all the foregoing, this Court concludes that it is in the best interest, not only of the public, but of the defendant himself, that the sentence imposed under the Youth Corrections Act is the best that could be fashioned in this case and that a modification or change would not be in the best interests of justice or of the defendant; it is accordingly,

ORDERED that the motion for modification or reduction of sentence be and is hereby denied."

Petitioner asserts in his present petition that he is incarcerated at the Federal Correctional Institution in Miami after having completed the Drug Abuse Program and other institutional goals set for him at his previous place of incarceration in Tallahassee. An institutional hearing regarding petitioner's status was held on November 11, 1975, as a result of which petitioner was continued until June of 1977. An appeal to the Regional Director of the Board of Parole was denied.

Petitioner contends that the purpose of the Youth Corrections Act is primarily rehabilitative, not punitive, and that the Parole Board's guidelines, 28 C.F.R. § 2.20, improperly take into account the severity of offense in their assessment of how much time a youth offender should normally remain incarcerated. Petitioner further asserts that the categorizing of youth offenders by salient factor scores and severity of offense is contrary to the individualized basis on which parole determinations should be made under the Youth Corrections Act. Petitioner is saying, by implication, that the establishment of guidelines by the Parole Board and the application of these guidelines in a routine, normative manner, similar to their application to adult offenders, is an abdication of the duty imposed upon the Board by the Youth Corrections Act to give individual attention to those persons incarcerated under the Act.

██ An analysis of the Youth Corrections Act must begin with the proposition that it is a departure from traditional sentencing concepts and that its focus is upon correction and rehabilitation. *Dorszynski v. United States,* 418 U.S. 424, 433, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855, 863 (1974). Individuality and flexibility of treatment are important elements of the Act, as is the progress of the individual within the programs selected for his treatment. *Cf. Dorszynski, supra.* The concept of "treatment" under the Act is defined in 18 U.S.C.

§ 5006(g) as "corrective and rehabilitative guidance and training designed to protect the public by correcting the antisocial tendencies of youth offenders." It follows, therefore, that guidelines which the Parole Board may promulgate and any application of guidelines already promulgated must be true to the above expressed objectives and methods of the Youth Corrections Act. This is not to say that the seriousness of the offense cannot be relevant to a determination by the Parole Board to release or retain the individual; the recognition by the individual of the gravity of his past conduct and its contrast to what should be his future conduct is an important part of the corrective and rehabilitative process. Furthermore, there must be some concern by the Parole Board for the protection of the public, and the severity of the offense must have some weight in that concern. Thus the guidelines are not arbitrary and capricious simply because they take into account the severity of the offense.[1]

What concerns this Court is, however, the seemingly mechanistic application of the guidelines and their use of offense severity as the *primary* criterion for parole consideration. This approach is inconsistent with the objectives of the Youth Corrections Act.

■ The written decision of the Parole Board sets out the severity rating of petitioner's offense, his salient factor score, the time he has been in custody, the norms established by the guidelines, and concludes with the following statements:

"After review of all relevant factors and information presented, it is found that a decision outside the guidelines does not appear warranted.

Board policy prohibits a continuance past one-third of your sentence at initial hearing. Therefore, your case has been scheduled for further consideration at one-third of your sentence."

In the context of the Youth Corrections Act, this Court finds such perfunctory "reasons" insufficient. *See Snyder v. United States Board of Parole,* 383 F.Supp. 1153, 1156 (D.Colo.1974). The Court in *Snyder,* supra, commented, when considering identical "reasons":

"Absent any additional explanation of these determinations, a permissible inference is that the board is acting on the basis of the nature of the offense and prescribing minimum terms for narcotics violations. Such an approach would indeed contradict the decision of the sentencing judge. It was for the Court to decide whether to impose a definite term or to use the flexibility of 18 U.S.C. § 5010(b). That judgment having been made, the emphasis must be placed upon treatment and rehabilitation of the offender."

383 F.Supp. at 1156.

It is the opinion of the Court that the Board of Parole can use guidelines as a tool but not as a rule. The severity of the offense may be considered but not as a substitute for the exercise of individualized discretionary judgment of the Board as obviously required by the Youth Corrections Act. Implicit in this opinion is that if the severity of the offense is to be a factor in the assessment of an individual's progress, it should be so stated by the Board and its relation to the individual's progress made clear.

■ The appropriate remedy for a case such as this was also pointed out in *Snyder;* the Board should consider petitioner as having made written application for parole and its hearing officers should consider petitioner's application fully and set forth reasons for any decision made thereon, 28 U.S.C. § 1361. Such statements must be more than mere conclusions and must relate to the adjustment and rehabilitative effort made by petitioner Page within the institutions where he has been confined. This Court is not saying, however, that petitioner must be paroled or, if he is paroled, when

---

1. This Court does not agree with the opinion in *Mayet v. Sigler,* 403 F.Supp. 1243 (M.D.Pa. 1975) which held ". . . guidelines which take offense severity into account as a critical factor in determining how long a youth offender will be incarcerated violates the purpose of the Act and are illegal." 403 F.Supp. at 1244.

that parole is to commence; accordingly, it is,

ORDERED that within sixty (60) days from date hereof the Board of Parole shall reconsider petitioner's application for parole and, in the event his release on parole is denied, it shall provide a written decision containing full, relevant, and individualized reasons for such denial.