Michael ROBINSON, Frank Sandoval, Saad Hannah Kakos, and all others similarly situated, Petitioners,

v.

Jack HANBERRY in his capacity as Warden of the Federal Correctional Institution at Milan, Michigan, and the United States Parole Commission, Respondents.

Civ. A. No. 6–72182.

United States District Court,
E. D. Michigan, S. D.

March 28, 1977.

Leslie R. Seeligson, Sigal & Seeligson, Ann Arbor, Mich., for petitioners.

L. Michael Wicks, Asst. U.S. Atty., Detroit, Mich., Patrick J. Glynn, Atty., Dept. of Justice, Washington, D.C., for respondents.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Petitioners are inmates at the Federal Correctional Institution at Milan, Michigan,

serving indeterminate six-year sentences pursuant to 18 U.S.C. § 5010(b) of the Youth Corrections Act (YCA). They bring this petition for habeas corpus under 28 U.S.C. § 2255, alleging that the guidelines promulgated by the United States Parole Commission to determine parole eligibility are in violation of and contrary to the purposes of the YCA. Petitioners also urge that all other similarly situated federal prisoners at Milan be certified as a class so that this petition may proceed as a class action.

A statement of the relevant facts is necessary. On May 14, 1976, petitioners Robinson and Sandoval appeared before the parole board. Their applications for parole were denied, and their cases were continued until January, 1977, and November, 1977 respectively.[1] Petitioner Kakos appeared before the board on July 14, 1976, at which time his application was denied and his case was continued until January, 1978. In making its determinations, the board relied on the Parole Commission's eligibility guidelines for youthful offenders, 28 C.F.R. 2.1 et seq., which are based upon severity of the offense and the individual's propensity for future criminal activity. The latter is determined by use of a "salient factor" score, which is a statistical prediction of recidivism based upon numerous factors, including prior convictions, drug abuse and educational level. The former is referred to as "offense severity." By virtue of their individual "salient factor" scores and the "offense severity" rating in the guidelines, petitioners were placed in guideline ranges of 13 to 17 months (Robinson), 27 to 32 months (Sandoval), and 20 to 27 months (Kakos). Such parole guideline ranges indicate the customary time to be served before release, assuming a record of good institutional performance.

Petitioners' basic contention is that the use of the guidelines by the Commission in determining when a youthful offender is eligible for parole violates the rehabilitative purposes of the YCA. Specifically, peti-tioners argue that such substantial reliance on the severity of the offense denies them the individual case-by-case consideration envisioned by the indeterminate sentencing structure of the YCA.

The petitioners' contention finds some support in decisions questioning the use of offense severity in the guidelines. See *Fletcher v. Levi*, 425 F.Supp. 918 (D.D.C. 1976); *United States ex rel. Mayet v. Sigler*, 403 F.Supp. 1243 (M.D.Pa.1975). However, Congress spoke definitively on this issue in its March 15, 1976 amendments to the YCA. *Walton v. Levi* (N.D.Cal. Dec. 8, 1976); *Daily v. United States Parole Commission* (E.D.Mich. Nov. 8, 1976).

In Public Law 94–233, effective May 15, 1976, Congress provided that the release of offenders sentenced under the YCA is now governed by the general parole criteria of the Parole Act. Specifically, section 5017(a) of the YCA provides that:

"The Commission may at any time after reasonable notice to the Director release conditionally under supervision a committed youth offender in accordance with the provisions of Section 4206 of this title."

Section 4206(a) of title 18, added by the March 15, 1976 revisions, states the general parole determination criteria as follows:

"If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, *upon consideration of the nature and circumstances of the offense* and the history and characteristics of the prisoner, determines:

"(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

"(2) that release would not jeopardize the public welfare;

* * * pursuant to guidelines promulgated by the Commission pursuant to sec-

---

1. The court is informed by counsel that Robinson was released from custody after his January, 1977 eligibility review hearing, and that Sandoval was released from custody after the sentencing court granted a Rule 35 motion for reduction of sentence. Kakos, however, is still in confinement.

tion 4203(a)(1), such prisoner shall be released." (Emphasis added.)

It is clear from the foregoing that the amendments to the YCA reflect congressional concern for the severity of an offense committed by a youthful offender. This concern is reflected, as well, in the legislative history of the new YCA. 1976 U.S. Code Cong. & Admin.News, no. 3, at p. 590. The court concludes that the Commission's use of guidelines which rely upon offense severity as a parole consideration for youthful offenders is not improper.

For the foregoing reasons, petitioners' application for writs of habeas corpus is denied. As such, this court does not reach the issue of certification of this action as a class action. Because the court decides that the named petitioners' application is not meritorious, it declines to consider the request for class certification.

So ordered.