Christopher WELLS, Appellant,

v.

A.S. GOLDEN, Appellee.

No. 99–SP–819.

District of Columbia Court of Appeals.

Argued Jan. 11, 2001.

Decided Nov. 1, 2001.

James E. McLeod, Washington, DC, appointed by the court, for appellant.[1]

Mary L. Wilson, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before FARRELL, RUIZ, and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Christopher Wells appeals the denial of a petition for a writ of habeas corpus, alleging that the District of Columbia Board of Parole[2] acted improperly under

---

**1.** James McLeod withdrew as appellant's counsel after oral argument, and Annie R. Alexander was appointed by the court to replace him.

**2.** The District of Columbia Board of Parole has been replaced by the United States Parole Commission. *See* D.C.Code § 24–1231(a)(1) & (2) (2000 Supp.). Our discussion of the

the Youth Rehabilitation Act (YRA), D.C.Code §§ 24–901 *et. seq.*, (2001), formerly D.C.Code §§ 24–801 *et. seq.*, (1996), and the Board's regulations in setting a parole reconsideration ("set-off") date for January 10, 2007, ten years after the commencement of his sentence. The trial court denied the habeas petition without a hearing, after the government responded that the Board has complete and unreviewable discretion in the matter and had complied with its regulations by giving reasons for departing from the one year set-off prescribed in 28 DCMR § 104.2 (35 D.C.Reg. 455 (1988)).[3]

■ Although we have held that the Parole Board has broad discretion in setting such dates for adult prisoners, *see White v. Hyman*, 647 A.2d 1175, 1180 (D.C.1994), we hold that Wells's sentence under the YRA, a statute that mandates treatment for certain offenders a judge has determined will benefit under the YRA, accordingly guides the discretion of the Parole Board. Because we have serious doubt on this record whether the Parole Board considered the YRA's twin goals of treatment and rehabilitation in deferring appellant's reconsideration date, we remand the matter for further proceedings.

## FACTS

According to the police report, Christopher Wells, who was then seventeen years old, used a silver handgun to rob a man of his wallet on a street corner at approximately 4:40 a.m. on October 30, 1995. Discovering that the wallet contained only $7, Wells and a companion robbed a second man five minutes later. The two victims contacted police immediately and described the robbers. After police arrested two men matching those descriptions, the complainants separately identified Wells and another man as their assailants. Wells pleaded not guilty, but was convicted of one count of armed robbery, *see* D.C.Code §§ 22–2801, 4502 (2001), formerly D.C.Code §§ 22–2901, 3202 (1996), possession of a firearm during a crime of violence, *see* D.C.Code § 22–4504 (2001), formerly D.C.Code § 22–3204(b) (1996), carrying a pistol without a license, *see* D.C.Code § 22–4504 (2001), formerly D.C.Code § 22–3204(a) (1996), and possession of a firearm without registration, *see* D.C.Code § 7–2502.01 (2001), formerly D.C.Code § 6–2311 (1995).

Wells's presentence report indicated that he was raised in a chaotic home environment characterized by chronic abuse, and would benefit from placement in a structured, institutional environment and treatment under the YRA. The trial court accepted that recommendation, and sentenced him to concurrent sentences of eighteen years for robbery, fifteen years for possession of a firearm, one year for carrying a pistol without a license, and one year for possession of a firearm without registration, all to be served under the YRA.

YRA officials placed Wells in a course of treatment that included academic and vocational classes, counseling, and programs addressing alcohol and drug addiction, conflict resolution, and employment. They recommended that Wells be reconsidered for parole five years after his initial hearing.

authority of the Board of Parole applies with equal force to its successor agency.

**3.** The government recognized that Wells had been sentenced under the YRA, but did not address whether that sentencing carried any implications for the Board's parole consideration.

The Parole Board concurred in the treatment recommendations,[4] but rejected the suggested five year set-off date in favor of a ten year reconsideration period. The Board based its decision on the severity of his crime, explaining that Wells should serve at least five years on each of the two robberies he committed:

> S[ubject] committed 2 armed robberies w[ith]in minutes of each other. He was sentenced to (1) 18 y[ea]rs & 15 years— concurrently. He should *serve 5 years on each!*

## ANALYSIS

 For a writ of habeas to issue, the inmate must present "an allegation and supporting facts which, if borne out by proof, would entitle him or her to relief." *Bennett v. Ridley,* 633 A.2d 824, 826 (D.C. 1993) (quoting *Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)). The court decides "whether the petitioner has been deprived of his legal rights by the manner in which the ... hearing was conducted, in order to determine whether there has been an abuse of discretion." *Id.*

 The question before us is whether Wells has can claim deprivation of any legal rights arising from the manner in which the Parole Board set his reconsideration date. Prisoners sentenced outside of the YRA may be released "[w]henever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law." *See* D.C.Code § 24–404(a) (2001), formerly D.C.Code § 24–204(a) (1996).[5] "Because the statute and regulation vest in the Board substantial discretion in granting or denying parole," prisoners generally have no statutory or constitutional interest in a parole reconsideration date. *White v. Hyman,* 647 A.2d at 1180; *see also Jones v. Braxton,* 647 A.2d 1116, 1117 (D.C.1994) (holding that a person sentenced to adult parole has no liberty interest to a set-off date under the Due Process Clause). "[U]nless the state can be said to have placed ... a substantive limitation on the exercise of official discretion," a failure to follow a guideline or any other non-binding guidance cannot be characterized as a deprivation of liberty. *See Hall v. Henderson,* 672 A.2d 1047, 1051 (D.C.1996).[6]

---

**4.** The Board's order included the following "Special Instructions for Reconsideration": "Complete Voc[ational] training; No new discip[linary] reports; Psychological counseling; Intensive drug program."

**5.** D.C.Code § 24–404(a) (2001) provides:

Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe. While on parole, a prisoner shall remain in the legal custody and under the control of the Attorney General of the United States or

his authorized representative until the expiration of the maximum of the term or terms specified in his sentence without regard to good time allowance.

**6.** A statute or regulation that limits the discretion of prison officials, *see Hall,* 672 A.2d at 1053, may give rise to a liberty interest protected by the Due Process Clause where officials seek to impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), or make a determination that would "inevitably affect the duration of the sentence," *see id.* at 487, 115 S.Ct. 2293; *see also Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that a prisoner has a right to due process before revocation of good time credits).

The same guidelines found not to place a substantive limitation on the discretion of the Parole Board in the case of adult offenders also apply to youthful offenders sentenced under the YRA. The underlying statutes pursuant to which adult and youthful offenders are sentenced are different, however, in ways that affect the Board's discretion.

■■■■ Youthful offenders sentenced under the YRA may be released "whenever appropriate." *See* D.C.Code § 24–904(a) (2001), formerly D.C.Code § 24–804(a) (1996).[7] We disagree with the government's contention that the phrase "whenever appropriate" in the YRA is as broad a delegation of authority as that contained in D.C.Code § 24–404(a) (2001) ("whenever it appears to the Board") for adult offenders. We interpret the language of a statute in the context of related provisions. *See Carey v. Crane Serv. Co.*, 457 A.2d 1102, 1108 (D.C.1983). Under the YRA, the youthful offender is sentenced to "treatment and supervision," D.C.Code § 24–903(b) (2001),

formerly D.C.Code § 24–803(b) (1996),[8] rather than simply incarceration. The youthful offender must be placed in a specialized facility adapted "for the treatment, care, education, vocational training, rehabilitation, segregation, and protection of youth offenders." D.C.Code § 24–902(b)(1), formerly D.C.Code § 24–802(b)(1) (1996).[9] A person who has been sentenced under the YRA may not be removed from the program and treated in the same manner as other prisoners without a formal determination that the offender will derive "no further benefit" from treatment, subject to appeal to the sentencing judge. *See* D.C.Code § 24–905 (2001), formerly D.C.Code § 24–805(a) (1996);[10] *Vaughn v. United States*, 598 A.2d 425, 430–31 (D.C.1991) (holding that a youth offender sentenced under the YRA has a liberty interest in all hearings related to his possible expulsion from the program). Thus, unless and until there has been a final determination pursuant to the procedures set out in the YRA that a youthful offender will derive "no further

7. D.C.Code § 24–904(a) (2001) states:
 A committed youth offender may be released conditionally under supervision whenever appropriate.

8. D.C.Code § 24–903(b) (2001) provides:
 If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may sentence the youth offender for treatment and supervision pursuant to this chapter up to the maximum penalty of imprisonment otherwise provided by law. The youth offender shall serve the sentence of the court unless sooner released as provided in § 24–904.

9. D.C.Code § 24–902(b)(1) (2001) provides that:
 The Mayor shall periodically set aside and adapt facilities for the treatment, care, education, vocational training, rehabilitation, segregation, and protection of youth offenders.

10. D.C.Code § 24–905(a) (2001) states:
 (a) If the Director of the Department of Corrections ("Director") determines that a youth offender will derive no further benefit from the treatment pursuant to this chapter, the Director shall notify the youth offender of this determination in a written statement that includes the following:
 (1) Notice that the youth offender may appeal the Director's determination to the sentencing judge in writing within 30 days of the youth offender's receipt of the Director's statement required by this section;
 (2) Specific reasons for the Director's no further benefit determination; and
 (3) Notice that an appeal by the youth offender to the sentencing judge will stay any action by the Director regarding a change in the youth offender's status until the sentencing judge makes a determination on the appeal.

benefit from the treatment" under the YRA, D.C.Code § 24–905(a), the Board's decisions are constrained by the sentencing judge's determination that the offender will derive benefit from treatment under the Act. There is no comparable limitation on the Board's discretion in releasing non-YRA prisoners.

 In the context of the YRA's emphasis on treatment and rehabilitation, the "appropriateness" of release under D.C.Code § 24–904(a) must depend, at least in part, on a consideration of such factors. The Board of Parole is therefore obliged to make its parole decisions in light of the youthful offender's potential or actual progress, or lack thereof, in his program of treatment.[11] We hasten to add that although treatment and rehabilitation are the cornerstones of the YRA, *see Veney v. United States*, 681 A.2d 428, 432 (D.C.1996) (en banc), the YRA "was not intended to make the defendant's potential for rehabilitation a dispositive sentencing criterion which trumps all others." *Id.* at 434. Incapacitation of the offender for prevention, deterrence and punishment are also appropriate considerations in sentencing decisions under the YRA. *See id.* Nevertheless, in exercising its discretion, the Parole Board must evaluate the youthful offender's rehabilitation and past and likely future progress in treatment in its decisions, even if its determination is ulti-

mately based on other considerations.[12] *See Palacio–Escoto v. United States*, 764 A.2d 795, 796 (D.C.2001) ("The actual duration of the treatment period is determined by the Youth Correction authorities.") (quoting *Dorszynski v. United States*, 418 U.S. 424, 455 n. 1, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974)). At least two federal courts, evaluating the duties of the parole authority under the predecessor statute to the YRA, the Federal Youth Corrections Act, 18 U.S.C. §§ 5005, *et. seq., repealed* Oct. 12, 1984, Pub.L. No. 98–473, Title II, Chapter II, § 218(a)(8), 98 Stat.2027, reached the same conclusion, holding that the parole board must consider the adjustment and rehabilitative efforts made by the youth offender in making its decisions. *See Page v. United States*, 428 F.Supp. 1007, 1009 (S.D.Fla. 1977); *Cook v. Ingram*, 436 F.Supp. 367, 369 (S.D.Fla.1977) (following *Page* ). *But see Barr v. United States*, 415 F.Supp. 990, 994 (W.D.Okla.1976) (holding that "[t]he Youth Corrections Act should not be read as engrafting an additional requirement of an evaluative statement of the prisoner's rehabilitation efforts.").

 In this case, the Board deferred appellant's parole reconsideration for ten years, and did so merely with the statement—which it underscored—that he "should serve five years on each!" of the two robberies that he committed.[13] With-

---

11. This includes the decision to set off reconsideration for parole. Too long a set-off could discourage a youthful offender's efforts at rehabilitation or risk keeping the youthful offender in prison beyond when it would have been appropriate to release him.

12. The fact that Wells may petition the Board for an earlier reconsideration date under 28 DCMR § 232.1 (1987), does not absolve the Board of its responsibility to take all relevant factors into consideration in setting a reconsideration date in the first instance.

13. Wells contended in oral argument that the Board erred in basing its decision on two robberies when Wells was convicted of only one. We disagree. The Board may rely on the entire record in assessing the facts of the case, *cf. Wright v. United States*, 262 A.2d 350, 352 (D.C.1970) (holding that, in the context of a revocation hearing, the Board's decision may be based on "all the facts when viewed in a context free of a reasonable doubt standard and the strictures of a formal criminal trial"), and the police report plainly supports the proposition that Wells committed two robberies.

out additional evidence, we are left with grave uncertainty whether the Board considered appellant's rehabilitative potential, after taking into account his background and the recommendation of youth correction officials, when it decided his length of confinement before he would be reconsidered for parole. We therefore vacate the order of the Superior Court and remand for further proceedings. If the government is unable to provide any further evidence that the Board's decision took into account the YRA's rehabilitative goal, appellant's set-off date must be reconsidered to ensure that discretion has been exercised in the manner described in this opinion.[14]

*So ordered.*

14. At oral argument, counsel for Wells indicated that he was not segregated from adult prisoners, despite the expressed preference in the YRA for such segregation. *See* D.C.Code § 24–902(b)(2) (2001), formerly D.C.Code § 24–803(b)(2) (1996). As this issue was not raised in the trial court, or briefed by the parties here, we do not decide whether Wells has any right to be housed in an age-segregated facility.