UNITED STATES, Appellant,

v.

Wardell CROCKETT, Appellee.

No. 03–CO–749, 03–CO–750.

District of Columbia Court of Appeals.

Argued Sept. 9, 2004.
Decided Nov. 18, 2004.

Suzanne Grealy Curt, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., Ann M. Carroll, and Daniel M. Cisin, Assistant United States Attorneys, were on the brief, for appellant.

Alison Flaum, Public Defender Service, with whom James Klein, Timothy P. O'Toole and Giovanna Shay, Public Defender Service, were on the brief, for appellee.

Before TERRY, REID, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

In this case, we must decide whether the Superior Court of the District of Columbia has jurisdiction to enforce treatment under the D.C. Youth Rehabilitation Act[1] ("Youth Act") on behalf of an offender sentenced under the Act, where the offender is neither incarcerated within the District of Columbia nor in the custody of D.C. officials. Appellant United States challenges the trial court's decision in which it ordered the Federal Bureau of Prisons ("BOP") to provide certain services to inmate appellee Wardell Crockett ("Crockett") under the Youth Act. The United States contends that the trial court lacked jurisdiction to take this action. We agree, and reverse the trial court's order.

I.

A. Trial and Sentencing

After a bench trial, Crockett was convicted of assault,[2] kidnaping while armed,[3] four counts of assault with a dangerous weapon,[4] destroying property,[5] and two counts of first degree cruelty to children.[6] In May 1998, the trial court sentenced Crockett to up to fourteen years for his convictions.[7] Because Crockett was identified as an offender who possibly would benefit from such treatment, the trial court "committed [Crockett] to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections" under the Youth Act.

Crockett was originally housed at the Lorton Correctional Complex in Lorton,

1. Relevant portions are located at D.C.Code §§ 24–801 to 24–807 (1981), recodified at D.C.Code §§ 24–901 to 24–907 (2001).

2. In violation of D.C.Code § 22–504 (1981), recodified at D.C.Code § 22–404 (2001).

3. In violation of D.C.Code §§ 22–2101, –3202 (1981), recodified at D.C.Code §§ 22–2001, –4502 (2001).

4. In violation of D.C.Code § 22–502 (1981), recodified at D.C.Code § 22–402 (2001).

5. In violation of D.C.Code § 22–403 (1981), recodified at D.C.Code § 22–303 (2001).

6. In violation of D.C.Code § 22–901(a) (1981), recodified at D.C.Code § 22–1101(a) (2001).

7. Fourteen years was the maximum sentence, with the others to run concurrently.

Virginia. With the closure of the Lorton facility, however, Crockett was transferred to BOP custody. *See* D.C.Code 24–101(b)(2001). The BOP placed Crockett at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), where he is currently incarcerated.[8]

### B. Crockett's motion and trial court order

On January 11, 2002, Crockett filed a pro se motion in the Superior Court requesting that the trial court enforce certain treatment under the Youth Act on his behalf. In the motion, Crockett requested that he be placed in a youth rehabilitation facility pursuant to the Youth Act. After receiving the motion, the court appointed Crockett counsel from the D.C. Public Defender Service, who filed a subsequent motion incorporating Crockett's pro se motion. In this second motion, counsel for Crockett argued that, in addition to being segregated from the adult prison population, Crockett was in need of special learning needs testing. Should he receive these educational services, counsel argued, Crockett would be able to prepare for the General Educational Development ("GED") exam. Without special services, or the development of another treatment plan, counsel for Crockett argued that he would not be able to attain his GED, which was a prerequisite for qualifying for parole. The motion also stated that Crockett's transfer to USP Terre Haute did not invalidate the terms of his sentence under the Youth Act. In a footnote in the motion, counsel for Crockett alleged that the Superior Court's jurisdiction to hear this case was based on the Youth Act, D.C.Code § 23–110(a), and § 16–1901(a). The government opposed the motion, contending

that the trial court lacked both personal and subject matter jurisdiction to hear the case because Crockett was now under BOP custody in Indiana.

On July 8, 2003, the trial court issued an order granting Crockett's motion to enforce the terms of his judgment and commitment order. The trial court ordered the BOP to "house Mr. Crockett only with other Youth Act prisoners," and "provide special learning needs testing and evaluation as well as develop an individualized rehabilitative treatment plan for Mr.. Crockett." The court devoted a substantial part of the order to its finding of jurisdiction in the case, stating that Crockett's motion was "in essence a petition for a writ of habeas corpus and [ ] construe[d] it as such." Accordingly, the trial court relied on D.C.Code § 16–1901, the District's habeas corpus provision. The trial court rejected the government's argument that D.C. courts lack jurisdiction to review habeas petitions of prisoners incarcerated outside the District under this court's decision in *Taylor v. Washington,* 808 A.2d 770, 772 (D.C.2002). The trial court stated that this case was distinguishable because Crockett's custodian is not the warden of the particular prison in which he is incarcerated, as in *Taylor,* but rather is deemed to be the Director of the Department of Corrections.

The trial court relied on additional statutory provisions to find jurisdiction. Specifically, the court stated that the Youth Act itself conferred jurisdiction because it allowed a sentencing judge to review a Youth Act offender's appeal from the Department of Corrections ("DOC") determination that the offender would derive "no further benefit" from treatment under the

---

8. The record reflects that Crockett shared his cell with another Youth Act inmate, but that Crockett came in contact with the prison's general population during the day. Further-

more, at oral argument, counsel for the United States represented that Crockett had been enrolled in an educational program.

Youth Act. Because, the trial court held, the Department of Corrections made a de facto "no further benefit" finding by ignoring Crockett's Youth Act status, the trial court had jurisdiction to review the case. The trial court also relied on the "remedies section on attacking sentences" of D.C.Code § 23–110 and the All Writs Act, 28 U.S.C. § 1651(a), as independent bases of jurisdiction.

The government appeals from this order.

## II.

### A. Standard of Review

On appeal, we review the trial court's order *de novo*. *See Feaster v. Vance*, 832 A.2d 1277, 1281–82 (D.C.2003) (noting that "[Jurisdictional] challenges raise issues of statutory construction, and hence the trial court's rulings are subject to *de novo* review in this court."); *District of Columbia v. Morrissey*, 668 A.2d 792, 796 (D.C.1995).

### B. Discussion

#### 1. D.C.Code § 16–1901/Habeas Corpus

In its order, the trial court concluded that, although Crockett did not ex-

pressly label his motion as such, his motion was "in essence a petition for a writ of habeas corpus." Although the trial court construed the motion as a habeas petition, it additionally relied on three other statutory provisions as independent bases for jurisdiction. We first address whether the trial court had jurisdiction under D.C.Code § 16–1901.[9]

Upon a review of the record, we hold that the trial court properly considered Crockett's motion to be a petition for writ of habeas corpus. In his motion, Crockett relied on § 16–1901 as a basis for jurisdiction. Furthermore, he alleged that the BOP's failure to meet his special educational needs was precluding him from being prepared to take the GED, thus depriving him of eligibility for parole. We agree with the trial court that Crockett's motion sounds in habeas, and construing it as such is in accordance with our case law. *See Alston v. United States*, 590 A.2d 511, 514 (D.C.1991) (holding that claims by prisoners which "concern the executive department's execution of sentence, not the trial court's imposition of sentence" must be raised in a habeas corpus petition).[10]

Although the trial court was correct in considering Crockett's motion as a habeas

---

**9.** D.C.Code § 16–1901 provides:

(a) A person committed, detained, confined, or restrained from his lawful liberty within the District, under any color or pretense whatever, or a person in his behalf, may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into. The court or the judge applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant the writ, directed to the officer or other person in whose custody or keeping the party so detained is returnable forthwith before the court or judge. (b) Petitions for writs directed to Federal officers and employees shall be filed in the United States District Court for the District of Columbia.

(c) Petitions for writs directed to any other person shall be filed in the Superior Court of the District of Columbia.

**10.** In a supplemental letter to this court, Crockett argued that the Supreme Court's recent decision in *Muhammad v. Close*, 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004), precludes a conclusion by this court that Crockett's case must be construed as a habeas matter. *See Muhammad*, 124 S.Ct. at 1304–05 (holding that prisoner not required to resort to state litigation and federal habeas before asserting § 1983 where "prisoner's challenge ... threatens no consequence for his conviction or the duration of his sentence."). Although *Muhammad* suggests that a challenge to the circumstances of confinement may be properly brought under 42 U.S.C. § 1983 and not as a habeas petition,

petition, it nevertheless erred in believing that it had jurisdiction to hear the case. Our recent holding in *Taylor*, 808 A.2d at 770, is dispositive of this issue. In *Taylor*, we held that the only proper respondent in a habeas action is the prisoner's custodian, who is usually the warden of the prison in which the prisoner is housed. For a prisoner who is housed outside of the District of Columbia, the Superior Court does not have personal jurisdiction over the custodian. Consequently, in this case, because Crockett's custodian—the warden of USP Terre Haute—is not located within the District, the trial court lacks jurisdiction to hear the case. Instead, consistent with our holding in *Taylor*, the proper jurisdiction for Crockett's motion would be the U.S. District Court for the Southern District of Indiana. *See Rumsfeld v. Padilla*, —— U.S. ——, ——, 124 S.Ct. 2711, 2713, 159 L.Ed.2d 513 (2004) (holding that because custodian of prisoner is the only proper respondent in habeas matter, federal court in New York lacked jurisdiction to hear habeas petition of prisoner incarcerated in South Carolina).

Having concluded that the trial court lacked jurisdiction to consider Crockett's

habeas petition, we now turn to the other provisions upon which the trial court relied. Our review leads us to conclude that none of them conferred jurisdiction on the trial court to order the BOP to enforce Crockett's Youth Act sentence.

### 2. D.C. Youth Act

■ With respect to the Youth Act, the trial court stated that it found jurisdiction under D.C.Code § 24–905(a)(1) (2001), which allows a sentencing judge to review DOC determinations that a youth offender will derive "no further benefit" from treatment under the Act.[11] Although there was no formal "no further benefit" finding by the BOP, the trial court held that it had jurisdiction under this provision because the BOP had made a de facto "no further benefit" finding. The trial court reasoned that, because the BOP "ignore[d] Mr. Crockett's youth status," the BOP had made a de facto finding that Crockett would derive no further benefit from those services. Based on this and its other findings of jurisdiction, the trial court ordered the BOP to house Crockett only with other Youth Act offenders and to "provide special learning needs testing and evaluation

---

the case has no applicability here. Crockett failed to raise § 1983 or any similar civil rights claim in the trial court, so we are precluded from considering it on appeal. *See Jung v. Jung*, 844 A.2d 1099, 1112 n. 9 (D.C. 2004).

**11.** The full text of § 24–905 states:

(a) If the Director of the Department of Corrections ("Director") determines that a youth offender will derive no further benefit from the treatment pursuant to this subchapter, the Director shall notify the youth offender of this determination in a written statement that includes the following:

(1) Notice that the youth offender may appeal the Director's determination to the sentencing judge in writing within 30 days of the youth offender's receipt of the Director's statement required by this section;

(2) Specific reasons for the Director's no further benefit determination; and

(3) Notice that an appeal by the youth offender to the sentencing judge will stay any action by the Director regarding a change in the youth offender's status until the sentencing judge makes a determination on the appeal.

(b) The decision of the sentencing judge on the appeal of the youth offender shall be considered a final disposition of the appeal and shall preclude further action by the Director to change the status of a youth offender for a 6–month period from the date of the sentencing judge's decision.

(c) Notwithstanding any other provision of law, subsections (a) and (b) of this section shall not apply to a youth offender convicted of any offense committed on or after August 5, 2000.

as well as develop an individualized rehabilitative treatment plan" for Crockett. Because we find that the plain language of the Youth Act does not authorize the trial court to order the BOP to provide services to an offender after he is sentenced, we conclude the trial court erred in exercising jurisdiction under the Act.

The Youth Act sets forth the conditions under which the trial court may sentence an offender it believes would benefit from treatment and supervision under the Act. *See* D.C.Code § 24–903 (2001). The Youth Act allows the trial court to sentence those eligible individuals [12] who commit an offense punishable by imprisonment to Youth Act treatment and supervision "up to the maximum penalty of imprisonment otherwise provided by law." *See* § 24–903(b). If the trial court chooses to sentence an offender under the Act, it must make a statement on the record setting forth the reasons why it believes that the offender will derive benefit from treatment under the Act. *See* § 24–903(c).

After an offender is sentenced, the trial court retains certain very limited authority over the case. Specifically, under Section 24–905, the trial court may review DOC, and arguably BOP, determinations that the offender will derive "no further benefit" from treatment under the Act. The trial court may affirm or reverse the DOC finding, thus either allowing the Youth Act offender to continue his treatment under the Act or authorizing his transfer to an adult facility or his transfer to the prison's general population.

Apart from the trial court's review of "no further benefit" findings, however, the Act does not grant the trial court any further authority with respect to Youth Act offenders.[13] Even in its review of "no further benefit" findings, there is nothing in the Act or our case law which gives the court jurisdiction to order the jailor to provide the offender specific services. For these reasons, we find that the trial court erred in finding that it had jurisdiction to order the BOP to provide Crockett particular treatment modalities under the Youth Act.

### 3. D.C.Code § 23–110

■ In its order, the trial court summarily listed D.C.Code § 23–110 as a basis for jurisdiction, but failed to explain its reasoning for finding jurisdiction under this statute. Additionally, Crockett fails to advance any specific argument on appeal with regard to whether the trial court had jurisdiction under § 23–110.

Section 23–110 expressly sets forth relief for only four circumstances: "1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, 2) the court was without jurisdiction to impose the sentence, 3) the sentence was in excess

---

**12.** In order to qualify for a Youth Act sentence, the offender must be less than 22 years old and have committed a crime other than murder. *See* D.C.Code § 24–901(6)(2001).

**13.** Although Crockett suggests that our decision in *Wells v. Golden,* 785 A.2d 641 (D.C. 2001) stands for the proposition that the trial court has ongoing supervisory authority to review the execution of Youth Act sentences, his reliance on that case is misplaced. At most, *Wells* stands for the proposition that a trial court has the authority to require the Parole Board or Commission to give reasons why a decision had been made to extend the release date of a Youth Act offender. This is wholly consistent with the trial court's authority to review "no further benefit" findings because the release date of the offender directly impacts on his or her ability to have his or her conviction set aside. Nothing in *Wells* or the Youth Act, however, suggests that the trial court retains authority to order a jailor to provide a Youth Act offender with any particularized services while incarcerated.

of the maximum authorized by law, 4) the sentence is otherwise subject to collateral attack." D.C.Code § 23–110 (2001). We have held, furthermore, that § 23–110 is not the proper provision for a prisoner to challenge the execution of his sentence. *See Alston,* 590 A.2d at 514. We are satisfied, therefore, that because Crockett failed to assert any of the four grounds for relief under § 23–110 and because we have determined that his case is in essence a habeas petition, the trial court lacked jurisdiction to consider his case under § 23–110.

### 4. All Writs Act

■ The trial court also based its jurisdiction on the All Writs Act, 28 U.S.C. § 1651, which states that "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). In its order, the trial court noted that the All Writs Act provided it authority to take action "necessary [and] appropriate" to enforce its judgment under the Youth Act. The court also noted that even if it lacked jurisdiction under habeas corpus, the All Writs Act served as an independent basis for jurisdiction.

Our case law, however, does not support the trial court's conclusion with respect to the All Writs Act. As the language of the Act indicates, the court may take action necessary and appropriate "in aid of" its jurisdiction. The Act does not, therefore, create an independent basis for jurisdiction where the court otherwise had none. *See District of Columbia v. Greene,* 806 A.2d 216, 219 (D.C.2002) (holding that All Writs Act grants relief in "extraordinary circumstances" and "does not constitute a concurrent basis for original jurisdiction") (internal quotation marks and citation

omitted). Rather, power under the Act "'has been deemed merely incidental to the courts' jurisdiction'" to review matters. *Greene,* 806 A.2d at 219 (quoting *FTC v. Dean Foods Co.,* 384 U.S. 597, 604, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966)). Therefore, the trial court erred in asserting jurisdiction based on the All Writs Act because it lacked original jurisdiction to enforce Crockett's sentence.

For the foregoing reasons, the order of the trial court is

*Reversed.*