Phillip A. HOLLOWAY, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CO–1139.

District of Columbia Court of Appeals.

Submitted March 4, 2008.
Decided June 19, 2008.

William G. Dansie, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, Elizabeth Trosman, Geoffrey Carter, and Sharon A. Sprague, Assistant United States Attorneys, were on the brief for appellee.

Before FARRELL, Associate Judge, and PRYOR and BELSON, Senior Judges.

BELSON, Senior Judge:

This appeal calls upon this court to decide precisely when a young adult becomes too old to be sentenced under the Youth Rehabilitation Act, D.C.Code § 24–901 *et seq.* (2001 and Supp.2007), ("YRA" or "Youth Act"), a question of first impres-

sion. Plainly, the special provisions of the Act are available in the sentencing of a person less than twenty-two years of age *at the time of sentencing.* The Act is unclear as to whether it also applies to persons who are less than twenty-two years of age *at the time of conviction,* but who reach their twenty-second birthday before sentencing. As the government points out in its brief, this court has never squarely addressed this issue.

Appellant Phillip Holloway was charged with one count of unlawful distribution of cocaine, D.C.Code § 48–904.01(a)(1) (2001), and entered a plea of guilty to one count of attempted distribution of cocaine on February 28, 2006. At the time of his plea, appellant was twenty-one years of age. By April 28, 2006, the date on which he was sentenced, appellant had passed his twenty-second birthday. For that reason, the trial court denied appellant's request for sentencing under the YRA, and subsequently denied his motion for reduction of sentence. The trial court rejected his argument that he was eligible for sentencing under the YRA because he was still twenty-one years of age when he entered his plea of guilty. We agree with appellant, and therefore reverse and remand for re-sentencing.

■■■ As this appeal raises a question of statutory interpretation, our review is *de novo. See United States v. Crockett,* 861 A.2d 604, 607 (D.C.2004). In construing the YRA, we look first to the language of the statute. "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi–Lo Powered Stirrups, Inc.* 424 A.2d 61, 64–65 (D.C.1980) (en banc) (quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)). Where "the plain meaning of the statutory language is unambiguous, the intent of the legislature is clear, and judicial inquiry need go no further." *District of Columbia v. Place,* 892 A.2d 1108, 1111 (D.C.2006) (internal citations omitted).

The Council of the District of Columbia enacted the YRA in 1985 "to fill the void created by congressional repeal of the Federal Youth Corrections Act ("FYCA"), [18 U.S.C. § 5005 *et seq.*] on October 12, 1984." REPORT OF THE COMMITTEE ON THE JUDICIARY, COUNCIL OF THE DISTRICT OF COLUMBIA, ON BILL 6–47, JUNE 19, 1985. When Congress repealed the FYCA, it adopted a new set of sentencing provisions for the federal courts, while leaving in place the District of Columbia Code's provisions for indeterminate sentences.

In our view, the meaning of the statute is not clear. The critical language of the YRA is found at D.C.Code § 24–901(2) and (6) (Supp.2007):

(2) "Conviction" means the judgment on a verdict or a finding of guilty, a plea of guilty, or a plea of no contest.

. . .

(6) "Youth Offender" means a person less than 22 years convicted of a crime other than murder, first degree murder that constitutes a crime of terrorism, and second degree murder that constitutes a crime of terrorism.

The comparable provisions of the FYCA, 18 U.S.C. § 5010(e) and (h), in force in federal and D.C. courts until October 12, 1984, provided:

(e) "Youth Offender" means a person under the age of twenty-two years at the time of conviction;

. . .

(h) "Conviction" means the judgment on a verdict or finding of guilty, a plea of guilty, or a plea of *nolo contendere.*

Each party argues unpersuasively that the language of the YRA should be read as plainly supporting its side of the issue.

The government argues that the term "judgment of conviction" is defined not only in Superior Court Criminal Rules 32(d)(1),[1] and in BLACK'S LAW DICTIONARY,[2] but also in case law, to include not only the finding or plea of guilt but also the sentence, citing in particular *Jackson v. United States*, 95 U.S.App.D.C. 328, 330, 221 F.2d 883, 885 (1955) ("The judgment of conviction from which the appeal was taken includes the sentence[.]"). We disagree. As an initial matter, we note that the YRA does not use the term "judgment of conviction," but, as quoted above, defines conviction as "a judgment on a verdict or a finding of guilty, a guilty plea...." The language of the statute itself does not correspond to the interpretation advanced by the government. We acknowledge that the term "judgment" frequently includes the sentence,[3] but as we will discuss this is far from universally the case.

Appellant, in arguing for the position that he incurred a "conviction" when he entered his plea of guilty rather than when he was sentenced, tellingly cites a number of statutes applicable in the District of Columbia that unarguably give the term "conviction" a meaning or content that does not include the sentence eventually imposed.

Appellant points, for example, to D.C.Code § 22–3804 (2001) which deals with "sexual psychopaths" and uses the language "[a]fter conviction or plea of guilty but before sentencing"; D.C.Code § 23–111(b) (2001), relating to recidivists, which provides that if a prosecutor files an information under this section, the court shall, "after conviction, but before pronouncement of sentence" inquire as to whether the prior convictions have been affirmed; and D.C.Code § 23–1325(b) (2001), relating to pretrial release, which refers to "[a] person who has been convicted of an offense and is awaiting sentence...."[4]

These provisions effectively call into doubt the government's argument that the statutory term "conviction" must be read to embrace the sentence. The provisions appellant cites do not, however, clarify what the Council, in enacting the YRA, intended regarding the question of when a

---

1. "A judgment of conviction shall set forth the plea, verdict or finding, and the adjudication and sentence." Super. Ct. R.Crim. 32(d)(1); *see also Jordan v. United States*, 350 A.2d 735, 737 n. 5 (D.C.1976).

2. Defining "judgment of conviction" as "[t]he written record of the criminal judgment consisting of the plea, the verdict or findings, the adjudication and the sentence." BLACK'S LAW DICTIONARY, 7th ed. 1999.

3. In *Jenkins v. United States*, 555 F.2d 1188, 1189 (4th Cir.1977), the court stated:
    [R]ead literally, § 5006 [of the FYCA] may be interpreted to mean that a youth offender, eligible for treatment under the Act, must not be twenty-two or older at the time of sentencing, since it is generally held that in a criminal case the sentence is the judgment. The legislative history of the Act discloses, however, that Congress employed

    the terms "conviction" and "sentence" as articulating two distinct concepts.

4. Appellant also calls our attention to other provisions of the D.C.Code which distinguish between conviction and sentencing. Among them are D.C.Code § 23–1322(a)(1)(B) (2001) refers to the appeal of a conviction "or" sentence; D.C.Code § 22–1804 provides that a "convicted" person may be sentenced, suggesting that a conviction precedes sentencing; D.C.Code § 22–2803 (2001) a carjacking statute, distinguishes convictions from sentencing; D.C.Code § 23–111 (2001) stating that "no person who stands convicted of an offense shall be sentenced to increased punishment" again suggesting that conviction precedes sentencing. See also the UNITED STATES SENTENCING GUIDELINES MANUAL § 4A1.2 (a)(4) governing cases where a defendant has been "convicted but not yet sentenced."

defendant loses eligibility for YRA sentencing by reason of age.

More to that point, appellant quotes certain language of the YRA itself that, he argues, demonstrates that the Council did not intend to make the YRA unavailable in the sentencing of an offender who reached the age of twenty-two after verdict, finding, or plea of guilty, but before imposition of sentence. Appellant points to the following three provisions of the YRA to support his argument that a youth offender must be a "convicted person" before the court imposes a sentence:

D.C.Code § 24–902(a), (c) (Supp.2007)

(a) The Mayor shall provide facilities and personnel for the treatment and rehabilitation of youth offenders convicted of misdemeanor offenses under District of Columbia law *and* sentenced according to this subchapter. (Emphasis added.)

. . .

(c) The Federal Bureau of Prisons is authorized to provide for the custody, care, subsistence, education, treatment, and training of youth offenders convicted of felony offenses *and* sentenced to commitment. (Emphasis added.)

D.C.Code § 24–903(b) (2001):

(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment ... the court may sentence the youth offender....

While the foregoing provisions give some support to appellant's position, we cannot agree that they give "plain meaning" to the YRA on the issue before us.

Unconvinced by the arguments of appellant and the government regarding a plain reading of the statutory language, we consider the rulings of other courts, particularly those located in the District of Columbia, regarding the effect of reaching the age of twenty-two under the provisions of the FYCA.[5] While the courts of the District of Columbia have adverted to the issue without deciding it, the federal Article III courts located in the District of Columbia have dealt with it directly, so we turn to their opinions first.

In *United States v. Carter,* 225 F.Supp. 566 (D.D.C.1964), the United States District Court for the District of Columbia ruled that "for purposes of determining whether a defendant qualifies as a 'youth offender,' [under the FYCA] the time of conviction is the time the verdict is returned or a plea of guilty is taken." *Id.* at 567. The court acknowledged that "[i]t is true, of course, that the Youth Act defines 'conviction' to mean 'the judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere.'" *Id.* at 567–68. It went on to say that for some purposes, such as time for appeal or time within which the statutorily limited period of probation under the FYCA would begin, the "judgment on a verdict" is that date on which sentence is imposed, but went on to add that "[i]t would be wrong, however, to extend these applications of the word 'judgment' to a situation which calls for entirely different considerations, particularly when the definition of 'youth offender' itself mentions neither sentence nor judgment, but rather speaks only of 'conviction.'" *Id.* at 568.

The court then pointed out that the "major purpose of the Youth Act is to provide the young defendant with treatment— namely 'corrective and preventive guidance and training designed to protect the

---

**5.** We are aware of no D.C. cases construing the relevant language of the more recent YRA. This court engaged in an extensive discussion of other parts of the YRA in *Veney v. United States,* 681 A.2d 428 (D.C.1996) (en banc).

public....' " *Ibid.* It also noted that to withhold the benefits of the Act from both the youth and the public because the defendant has turned twenty-two by the time of sentencing might permit a fortuitous circumstance, e.g., the incidence of the holiday season or other periods when the court is not in session, to determine an important substantive decision. The court added that the use of the date of sentencing as determinative of eligibility for Youth Act sentences might force a judge who wished to use the Act to sentence without the benefit of a thorough presentence report.

So far as it appears, the District Court's ruling was not appealed, and thus did not lead to a holding that is binding on this court, even though *Carter* was decided before adoption of the District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91–358. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).

The United States Court of Appeals for the District of Columbia Circuit expressed its agreement with the District Court's ruling in *Carter* in *United States v. Branic,* 162 U.S.App. D.C. 10, 495 F.2d 1066 (1974). In a per curiam opinion (JJ. Bazelon, Robb and Wilkey), the court stated:

> Appellant Stevens—who was twenty-one years old at the time of the jury verdict—was not considered for youth sentencing because he was twenty-two at the time he was sentenced. The Youth Act defines a "youth offender" as "a person under the age of twenty-two years at the time of conviction," and defines "conviction" as "the *judgment* on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere." 18 U.S.C. § 5006(e), (h) (emphasis supplied). However, for the reasons given by Judge Youngdahl in *United States v. Carter,* 225 F.Supp. 566 (D.D.C.1964), we reject a formalistic reading of the statute and hold that 'for purposes of determining whether a defendant qualifies as a 'youth offender,' the time of 'conviction' is the time the verdict is returned or a plea of guilty is taken.' *Id.* at 567. Thus, we remand Stevens' case for resentencing.

162 U.S.App.D.C. at 14, 495 F.2d at 1070.

*Branic* was decided after the Court Reorganization Act went into effect, and thus under *M.A.P. v. Ryan, supra,* it is not controlling precedent in the courts of the District of Columbia. But its holding and its adoption of the reasoning of the trial court in *Carter* can be considered persuasive authority. *See Faggins v. Fischer,* 853 A.2d 132, 143 (D.C.2004) ("Although it is true ... that opinions of the local United States Court of Appeals are no longer binding on this court, *see M.A.P., supra,* 285 A.2d at 312, we treat them as highly persuasive.").

Although this court has not squarely addressed the question before us, it has made comments that relate to it. In *Gaffney v. United States,* the court dealt with a claim of denial of the right to a speedy trial. 421 A.2d 924 (D.C.1980), *cert. denied,* 451 U.S. 941, 101 S.Ct. 2026, 68 L.Ed.2d 330 (1981). Gaffney argued, *inter alia,* that he was prejudiced by delay in his trial by reason of the fact that he turned twenty-two years of age after the jury verdict was returned but before his sentencing, thus making him ineligible for sentencing under the FYCA. This court's opinion stated, in dicta, that Gaffney "achieved twenty-two years, and thus ineligibility under the Youth Correction Act, between the verdict and the sentencing." *Id.* at 929. The court ruled, however, that it was "unnecessary here for this court to resolve the issue of whether "conviction" as used in the FYCA "means rendition of the verdict or whether it means entry of the judgment." *Id.* It explained that "im-

mediately following the return of the verdict, Gaffney's counsel requested that sentencing be deferred 30 days, until after Gaffney's twenty-second birthday. Thus any ineligibility for Youth Correction Act treatment is attributable to appellant's request to delay sentencing." *Id.*

Similarly, this court included dicta in its opinion in *(Fred) Bailey v. United States*, 385 A.2d 32 (D.C.1978), *cert denied*, 439 U.S. 871, 99 S.Ct. 203, 58 L.Ed.2d 183 (1978),[6] to the effect that it was "seemingly clear" that a defendant has to be under twenty-two years of age at the time of sentencing in order to qualify for FYCA sentencing.[7] *Id.* at 34.

While *Gaffney* and *Bailey* contain only dicta regarding the question before us, they obviously merit our consideration. Upon such consideration, however, we find more persuasive the holding of the D.C. Circuit in *Branic* and the decision of the U.S. District Court in *Carter*. *Gaffney* and *Bailey* did not analyze the statute in question, nor did they consider its overall purpose, as the courts did in *Branic* and *Carter*. They were focused on other matters, *Gaffney* on speedy trial issues, and *Bailey* on the overall quality of appellant's guilty plea.

Our discussion of *Carter* and *Branic* makes it clear that the courts issuing those opinions were not engaging solely in an analysis of the language of the FYCA. Rather they deemed it appropriate to consider the overriding purpose of the Act.

As our quotation from this court's opinion in *Place, supra*, indicates, it is because we have found the language of the YRA ambiguous in its use of the terms "conviction" and "convicted" that we are free to consider the overriding purpose and legislative history of the statute. Indeed, *Carter* spoke of the court's "responsibility to make reasonable sense out of the statutory language in harmony with the purpose of the statute and with sound judicial administration." 225 F.Supp. at 568. The opinion had already adverted to the major purpose of the Youth Act which it stated was "to provide the young defendant with treatment—namely, 'corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies' of such young defendant." *Id.* (Citing 18 U.S.C. § 5006(g) (2001)).

The same is true of the YRA. Its legislative history demonstrates that its purpose was threefold: (1) to give the court flexibility in sentencing a youth offender according to his or her individual needs, (2) to separate youth offenders from more experienced offenders, and (3) to give a youth offender the opportunity to start anew through expungement of his or her criminal record. See REPORT OF THE COMMITTEE ON THE JUDICIAL ON BILL 6–47, "YOUTH REHABILITATION ACT OF 1985", at p. 2. As the courts in *Carter* and *Branic* concluded, the similar statutory purposes of the FYCA were better served by construing the statute to permit eligibility for one whose conviction or plea of

---

6. Other opinions of this court that deal with whether a court order of an FYCA § 5010(e) study amounts to a conviction for purposes of impeachment of a witness do not shed light on the issues before us. *See Langley v. United States*, 515 A.2d 729 (D.C.1986); *see also Stewart v. United States*, 490 A.2d 619, 625–26 (D.C.1985).

7. The court found the trial court's denial of an appellant's third attempt to vacate a life

sentence after a plea of guilty to first-degree murder to be free of error even on the "gratuitous assumption indulged by the trial court that [appellant's counsel's] advice was in error" in that counsel advised appellant that he had to be under twenty-two years of age at the time of sentencing to be eligible for sentencing under the Act. *Bailey, supra*, 385 A.2d at 34.

guilty takes place before the age of twenty-one. The same is true of the YRA. Ultimately, it is the rehabilitative and public safety purpose of the YRA, like that of the FYCA, as well as the framework and legislative history of both acts, that persuade us to hold that it is the defendant's age at the time of conviction that determines eligibility for sentencing pursuant to the YRA.

 Finally, we observe that since there is ambiguity in the language of the YRA and two reasonable constructions of the age eligibility requirement, the rule of lenity counsels the result we reach. The rule of lenity helps to resolve ambiguity in criminal statutes. *See United States Parole Comm'n v. Noble,* 693 A.2d 1084, 1103–4 (D.C.1997). "The rule of lenity ... can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leaves its meaning genuinely in doubt." *Id.* at 1104 (internal citations omitted). It is "a secondary canon of construction, and is to be invoked only where the statutory language, structure, purpose, and history leave the intent of the legislature in genuine doubt." *Cullen v. United States,* 886 A.2d 870, 874 (D.C.2005) (internal citations omitted). As Justice Scalia, writing for the plurality in *United States v. Santos,* stated recently: "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." —— U.S. ——, ——, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912, ——, 2008 WL 2229212, at *5 (June 2, 2008). The rule of lenity favors an interpretation that a corrigible youth convicted before the age of twenty-two, but not sentenced until after the age of twenty-two, who is still worthy of rehabilitation, should where consistent with public safety and other rel-

evant considerations, be permitted a second chance to rethink his or her life.

Accordingly, we reverse and remand to the trial court for reconsideration of the sentence imposed. The trial court did not exercise its discretion regarding imposition of a YRA sentence, because it thought it had none. *See Johnson v. United States,* 398 A.2d 354, 363 (D.C.1979). On remand, the trial court is to exercise that discretion.

*So ordered.*